724 F.Supp. 458 (1989)
In re GRAND JURY SUBPOENA FOR ATTORNEY REPRESENTING CRIMINAL DEFENDANT Jose Evaristo REYES-REQUENA.
Misc. No. H-89-522.
United States District Court, S.D. Texas, Houston Division.
October 31, 1989.
*459 Henry K. Oncken, U.S. Atty., Susan Kempner, Lawrence D. Finder and Kenneth Magidson, Asst. U.S. Attys., Houston, Tex.
Dick DeGuerin, DeGuerin & Dickson, Houston, Tex., for Mike DeGeurin.
Jim E. Lavine, Houston, Tex., for Harris County Crim. Lawyers Ass'n.
Jack B. Zimmerman, Association of Trial Lawyers of America, Houston, Tex., for American Trial Lawyers Ass'n.
Kent A. Schaffer, James Clifford Sabolos, Don Ervin, Houston, Tex., for Tex. Crim. Defense Lawyers Ass'n.
Gerald H. Goldstein, Goldstein, Goldstein & Hilley, San Antonio, Tex., for Nat. Ass'n of Crim. Defense Lawyers.

ORDER
HITTNER, District Judge.
Pending before this Court is the Motion to Quash Grand Jury Subpoena for Attorney of Record for Defendant Jose Evaristo Reyes-Requena, Mike DeGeurin (Document No. 2).
The Court has considered petitioner's motion and the Government's response. On October 2, 1989, the Court heard the arguments of movant, Mike M. DeGeurin, his attorney, Dick DeGuerin, and the Government, represented by Lawrence D. Finder. Additionally, the Court heard the arguments of representatives from the National Association of Criminal Defense Lawyers, the Texas Criminal Defense Lawyers Association, the Harris County Criminal Lawyers Association, and the Association of Trial Lawyers of America, who were granted leave to appear as amici curiae in this action. Having reviewed the foregoing and the applicable law, the Court concludes that the motion to quash should be, and hereby is, granted.

BACKGROUND
The Intervenor, Jose Evaristo Reyes-Requena ("Reyes-Requena"), was arrested on or about September 18, 1989, in a residence containing in excess of 141 kilograms of a substance believed to be cocaine. Reyes- *460 Requena was in the living room sleeping on a bedroll on the floor. A loaded 357 magnum revolver was subsequently found under the blankets. Agents found the cocaine in the front bedroom. Intervenor was charged with possession with intent to distribute in excess of five kilograms of cocaine, a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), in Cause No. H-89-834M pending in the Southern District of Texas.
On September 22, 1989, a United States Magistrate held a combined preliminary examination and detention hearing. During cross-examination by defense counsel Mike DeGeurin, an FBI witness related the substance of certain postarrest statements made by Intervenor. In summary, Intervenor told an agent that he had come to the Houston area approximately two months previously from Matamoros, Mexico, and was unemployed. He met a person, whom he called "Chapa," who offered Intervenor the use of a residence and food in exchange for watching the residence. Intervenor stated that he had seen Chapa bringing boxes into and out of the house. It was at this residence that Intervenor was arrested. At the conclusion of the preliminary examination, the magistrate found the evidence sufficient to support a finding of probable cause for arrest. Intervenor was subsequently released on bond.
After the hearing, the Government prepared a grand jury subpoena directed to Mike DeGeurin, which was executed sometime on or after September 26, 1989. The subpoena requested that Mike DeGeurin testify before the federal grand jury on September 29, 1989, and that he bring to the grand jury
any and all documents or records pertaining to legal fees received or due to you or your law firm for your representation of Jose Evaristo Reyes-Requena, including, but not limited to fee agreements or contracts for the representation of Jose Evaristo Reyes-Requena; receipts or invoices for fees received or owed for the representation of Jose Evaristo Reyes-Requena; and any memoranda, papers or recordings concerning the source of fees paid or due you or your law firm for the representation of Jose Evaristo Reyes-Requena.
Mike DeGeurin, represented by his brother, Dick DeGuerin,[1] now asks this Court to quash the Government's subpoena.

ANALYSIS
The issue before this Court is whether in the course of ongoing criminal proceedings the Government may serve a grand jury subpoena upon an attorney, seeking disclosure of fee information so as to "ascertain the breadth of criminal activity." Government's Response to Motion to Quash Grand Jury Subpoena for Attorney of Record for Defendant Jose Evaristo Reyes-Requena, Mike DeGeurin, at 3 [hereinafter Government's Response].
Mike DeGeurin argues that this Court should quash the subpoena on the following grounds: (1) the subpoena was issued in violation of the Justice Department's internal guidelines requiring approval of the Assistant Attorney General of the Criminal Division before an Assistant United States Attorney may issue a subpoena to an attorney (citing U.S. Department of Justice, Attorney Subpoena Guidelines, Executive Office for the United States, Department of Justice, United States Attorneys' Manual § 9-2.161(a) (1985) [hereinafter DOJ Manual]); (2) compliance with the subpoena would contravene movant's obligations under the Code of Professional Responsibility of the State of Texas, which requires that he not divulge any facts which came to his attention by reason of an attorney-client relationship (citing Supreme Court of Texas, State Bar Rules Art. 10, § 9 (Code of Professional Responsibility) Canon 4, DR 4-101, reprinted in Tex.Gov't Code Ann. tit. 2, subtit. G App. (Vernon 1988) [hereinafter Texas Code of Professional Responsibility]); (3) the subpoena violates the attorney-client privilege; and (4) service of the subpoena upon the Intervenor's attorney deprives the Intervenor of his sixth amendment right to counsel.

*461 A. Department of Justice Guidelines

The United States Department of Justice Attorney Subpoena Guidelines provide that prior to the issuance of a subpoena to an attorney relating to the representation of a client, the Assistant Attorney General of the Criminal Division must determine, in part, that:
The reasonable need for the information ... outweigh[s] the potential adverse effects upon the attorney-client relationship. In particular, the need for the information must outweigh the risk that the attorney will be disqualified from representation of the client as a result of having to testify against the client.
DOJ Manual, supra, § 9-2.161(a)(E)(4). Movant contends that the Government failed to obtain the requisite prior approval and that, accordingly, the subpoena must be quashed. The Government responds that it did obtain prior approval and even if it had not, failure to comply with internal guidelines is not grounds to quash a subpoena.
Generally, courts will decline to enforce federal agency guidelines, such as those at issue here, that are not mandated by statute or the Constitution. See, e.g., United States v. Caceres, 440 U.S. 741, 755-56, 99 S.Ct. 1465, 1473-74, 59 L.Ed.2d 733 (1979). Additionally, the Department of Justice guidelines include a specific proviso negating enforceability:
These guidelines ... are set forth solely for the purpose of internal Department of Justice guidance. They are not intended to, do not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter, civil or criminal, nor do they place any limitations on otherwise lawful investigative or litigative prerogatives of the Department of Justice.
DOJ Manual, supra, § 9-2.161(a); see also Stern & Hoffman, Privileged Informers: The Attorney Subpoena Problem and A Proposal for Reform, 136 U.Pa.L.Rev. 1783, 1819 (1988) ("[DOJ] [g]uidelines are completely unenforceable").
The Court thus concurs with the Government that any failure to comply with internal guidelines is not a basis for quashing the Government's subpoena.[2]

B. Code of Professional Responsibility

Mike DeGeurin next argues that compliance with the subpoena would cause him to violate the Texas Code of Professional Responsibility. Rule 4 B of Appendix 3 of the Local Rules for the United States District Court for the Southern District of Texas provides that an attorney's conduct before the Courts of the Southern District of Texas is governed by the Code of Professional Responsibility of the State Bar of Texas. Disciplinary Rule 4-101 of the Texas Code of Professional Responsibility provides that "a lawyer shall not knowingly: ... [r]eveal a confidence or secret[3] of his client." Texas Code of Professional Responsibility, supra, DR 4-101(B).
Without reaching the issue of whether the information sought falls within the attorney-client privilege and is thus a "confidence," this Court concludes that enforcement of the subpoena would not cause movant to violate his ethical obligations under the Code. In addition to the foregoing provision, the Texas Code also provides that an attorney may reveal confidences and secrets when "required by law or court order." Id. DR 4-101(C)(2). Under the circumstances here, Mike DeGeurin's compliance would be compelled by a court order enforcing the subpoena. Accordingly, the Court is unable to find that any resulting disclosure would constitute an ethical violation. See Stern & Hoffman, supra, at 1815-16.

*462 C. Attorney-Client Privilege

Pursuant to Rule 26 of the Federal Rules of Criminal Procedure, federal common law governs the applicability of the attorney-client privilege in this circuit. In re Grand Jury Proceedings (Jones), 517 F.2d 666, 669-70 (5th Cir.1975). The privilege applies in the following instance:
(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or the legal adviser, (8) except the protection be waived.
8 J. Wigmore, Evidence § 2292, at 554 (McNaughton rev. ed. 1961). Generally, the identity of a client is not privileged, Frank v. Tomlinson, 351 F.2d 384, 384 (5th Cir.1965), cert. denied, 382 U.S. 1028, 86 S.Ct. 648, 15 L.Ed.2d 540 (1966), nor are matters involving the receipt of fees, United States v. Finley, 434 F.2d 596, 597 (5th Cir.1970).
Accordingly, the Government contends that the information sought by subpoena is not privileged. Movant and amici argue, however, that despite the general rule, the information is nonetheless protected under an exception first articulated in this circuit in In re Grand Jury Proceedings (Jones), 517 F.2d 666 (5th Cir.1975).
In quashing several subpoenas the Jones court concluded that despite the generally unprivileged nature of client identity and fee information, certain "information, not normally privileged, should ... be protected when so much of the substance of the communications is already in the government's possession that additional disclosures would yield substantially probative links in an existing chain of inculpatory events or transactions." Id. at 674.
The Government contends that the so-called "last link"[4] exception is narrowly construed by the courts. Furthermore, the Government argues, the exception does not exempt Mike DeGeurin from compliance, as the information sought by the subpoena does not constitute the last link in a chain of evidence leading to the indictment of Mike DeGeurin's client.[5]

1. "Last Link" Exception
The determination of whether the narrow last link exception applies to exempt a subpoenaed attorney from disclosing fee information or client identity[6] must be made on *463 a case-to-case basis. Jones, 517 F.2d at 671. Jones involved a grand jury investigation of certain individuals for suspected narcotics and tax violations. The government subpoenaed the targets' attorneys, seeking to learn the source of their fees and the identity of possible third-party benefactors. Id. at 668-69. The court rejected the government's argument that information about client identity, fee and bonding arrangements were not privileged "unless disclosure would lead automatically to conviction for a criminal offense." Id. at 672. In rejecting a test of "quantum sufficiency," the court noted that "the correct approach is a matter of logical relevance and probative value." Id. (citing Baird v. Koerner, 279 F.2d 623, 633 (9th Cir.1960)). The court quashed the subpoena finding that disclosure by the attorneys would be relevant to "corroborating or supplementing already existing incriminating information." Id. at 674.
Subsequently, the Fifth Circuit declined to quash an attorney subpoena in In re Grand Jury Proceedings (Pavlick), 680 F.2d 1026 (5th Cir. Unit A 1982) (en banc). Pavlick concerned a government motion to compel disclosure from an attorney, Pavlick, following the conviction of three of his clients on marijuana charges. When called before the grand jury, Pavlick refused to identify the third party who had retained him to represent the smugglers, claiming attorney-client privilege. Id. at 1027. The court stated that such information was privileged only if "disclosure of the client's identity by his attorney would have supplied the last link in an existing chain of incriminating evidence likely to lead to the client's indictment." Id. (emphasis added). In reversing the trial court's denial of the motion to compel, the court observed that the information the government sought was "by no means the last link in any chain of inculpatory events" and would not necessarily give the government the evidence necessary to indict the benefactor. Id. at 1027 & n. 2.
As the Jones court observed, however, application of the "last link" exception is fact-specific. Jones, Pavlick, and other cases suggest that there are also certain factors that are significant in determining if an attorney will be exempted from compliance with a subpoena. First, the current status of the attorney-client relationship and the criminal proceedings is relevant to a decision to quash. A subpoena directed to an attorney who represented the client in a prior unrelated case will be unlikely to elicit information constituting the "last link" in a chain of evidence relevant to the current charge. E.g., In re Grand Jury Subpoena, 774 F.2d 624, 628 (4th Cir.1985) (exception inapplicable as "documents at issue do not concern payment of legal fees as to this investigation" (emphasis added)), cert. denied, 475 U.S. 1108, 106 S.Ct. 1514, 89 L.Ed.2d 913 (1986).
Second, evidence that clients or third-party benefactors have used attorneys and the privilege as shields for continued illicit activity affects judicial application of the exception. *464 E.g., Pavlick, 680 F.2d at 1028. In declining to quash the subpoena, the Pavlick court concluded that the attorney had been retained to further incipient or preexisting criminal or fraudulent activity. Id. at 1028-29 (evidence here that "act of furnishing ... counsel was an act done in furtherance of the illegal scheme itself" distinguishes case from Jones); see also In re Grand Jury Subpoenas, 803 F.2d 493, 499 (9th Cir.1986) ("what is really involved in this case is an attempt to employ the attorney-client privilege to shield those who might be involved in illegal activity").
Applying the foregoing to the facts at bar, the Court concludes that the subpoena directed to Mike DeGeurin must be quashed. Currently, the Government has what is termed a "mere presence" case against the Intervenor. Intervenor has been charged with possession with intent to distribute. According to information elicited at this Court's hearing, the only evidence the Government has against Reyes-Requena is that he was asleep on a bedroll in the living room of a home in which the police subsequently found 141 kilograms of cocaine located in a bedroom. Attorneys for both the defense and the Government concede that mere presence where a crime is committed and knowledge that the crime is being committed are insufficient as a matter of law to prove guilt of the crime. Preliminary and Detention Hearings before the United States Magistrate, CR. H-89-834M, at 57-58, 61 (Sept. 22, 1989). A subpoena to Reyes-Requena's attorney, however, could elicit information providing an affirmative connection between the Intervenor and the cocaine.
Mike DeGuerin's compliance with the subpoena could possibly provide the Government with evidence that Reyes-Requena had knowledge of the contraband's presence. Such evidence would tend to connect Reyes-Requena to the cocaine, thus establishing a stronger case against him than "mere presence." Additionally, the information sought may provide evidence of the existence of a conspiracy, allowing the Government to bring additional charges against the Intervenor.
The Court thus finds that the facts of this case mandate the quashing of a subpoena which seeks to elicit the last link of incriminating evidence against Intervenor from his attorney. The subpoena has been served upon the attorney during the pendency of criminal proceedings, and seeks information that could be relevant to those proceedings. Although in other contexts, that information may not be privileged, in this case the revelation of such information may, in fact, provide the crucial link in the Government's case. The privilege here is not abrogated by any suggestion that it is raised as a shield to further illicit activity, as the Government does not contend that Mike DeGeurin was retained in this case for that purpose. See In re Grand Jury Subpoenas, 803 F.2d at 499.
Accordingly, the Court concludes that under the circumstances, the information sought is subject to the attorney-client privilege.

D. Rule 17(c) Supervisory Power

Although the Court has determined that the subpoena should be quashed pursuant to the attorney-client privilege, the Court also notes that it may, under Rule 17(c) of the Federal Rules of Criminal Procedure, quash a subpoena duces tecum found to be "unreasonable or oppressive," independent of a finding of privilege.
Rule 17(c) provides that "[t]he court on motion ... may quash or modify ... [a] subpoena if compliance would be unreasonable or oppressive." Fed.R.Crim.P. 17(c). Courts have also invoked the more general supervisory power to quash a subpoena based on "the particular circumstances under which it was issued." Stern & Hoffman, supra, at 1813. The most prevalent justification for quashing a subpoena under Rule 17(c) appears to be the timing of the subpoena. E.g., In re Grand Jury Subpoena (Legal Servs. Center), 615 F.Supp. 958, 969-70 (D.Mass.1985) (noting that "the timing of the grand jury's subpoenas, coming as they do while the petitioners are involved in pending INS proceedings on behalf of their clients, is unreasonable and oppressive"); In re Grand Jury Matters, *465 593 F.Supp. 103, 105 (D.N.H.) (stating that a "very important premise is that the actions are pending in a New Hampshire [s]tate [c]ourt and under investigation in ... [f]ederal [c]ourt"), aff'd, 751 F.2d 13 (1st Cir.1984). The service of a subpoena upon an attorney during the pendency of a criminal proceeding for which the attorney has been retained has, at the least, a chilling effect upon his ability to represent his client. See Legal Servs. Center, 615 F.Supp. at 970; In re Grand Jury Matters, 593 F.Supp. at 107.
In the instant case, the Government has subpoenaed a defense attorney during the pendency of indictment proceedings. The subpoena here impinges upon the attorney-client relationship and, by diverting attention from the preparation of the client's defense, severely hinders the attorney's effectiveness in representing him. Accordingly, apart from the issue of privilege, the Court would quash the subpoena given the timing of, and circumstances surrounding, its issuance.

E. Sixth Amendment

Although it has already reached its decision on other nonconstitutional grounds, the Court finds it advisable to address movant's constitutional objection to the subpoena. Movant contends that the service of a subpoena on the Intervenor's attorney deprives the Intervenor of his sixth amendment right to counsel. Amici argue that the subpoena chills the attorney-client relationship by: (1) causing the client to mistrust his attorney; (2) creating a conflict of interest as a result of the competing interests of the attorney and his client; (3) diluting the attorney's effectiveness by diverting his attention from preparation of his client's defense; and (4) possibly causing disqualification of the attorney. The Government responds that compelling Mike DeGeurin to disclose the identity and fee arrangements of a benefactor does not deprive the Intervenor of his sixth amendment rights. The Government relies primarily upon the recent United States Supreme Court decision in Caplin & Drysdale v. United States, ___ U.S. ___, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989).[7]
The sixth amendment provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. Amend. VI. Generally, although subject to certain limitations, a defendant has the right to counsel of his choice. See Powell v. Alabama, 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932). Recently, however, the Supreme Court further delineated the scope of a defendant's right to counsel of choice:
Whatever the full extent of the Sixth Amendment's protection of one's right to retain counsel of his choosing, that protection does not go beyond "the individual's right to spend his own money to obtain the advice and assistance of ... counsel." A defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that that defendant will be able to retain the attorney of his choice.
Caplin & Drysdale, 109 S.Ct. at 2652 (citation omitted). In Caplin & Drysdale, the petitioner's client had pleaded guilty to a continuing criminal enterprise charge and agreed to forfeit, pursuant to 21 U.S.C. § 853, all of the assets specified in the indictment. Id. at 2649-50. Subsequently, petitioner filed a petition under the forfeiture statute seeking an adjudication of its rights to a portion of the forfeited property as attorney's fees, and challenging, inter *466 alia, the statute as unconstitutional if such fees were not exempt from forfeiture. Id. at 2650. The Supreme Court affirmed the en banc decision of the Fourth Circuit in which a majority had held that the failure of the continuing criminal enterprise statute to exempt fees from forfeiture did not violate the sixth amendment. Id.
Caplin & Drysdale is distinguishable from the case at bar. Caplin & Drysdale involved statutorily authorized fee forfeiture. The Supreme Court found that any existing sixth amendment interest in using forfeitable assets to retain counsel was overridden by the "strong governmental interest in obtaining full recovery of all forfeitable assets." Id. at 2655. The Government here has conceded, however, that this is not a fee forfeiture case. Neither Caplin & Drysdale, nor its companion case, United States v. Monsanto, ___ U.S. ___, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989), concerned the issue presented here: whether the Government may, prior to indictment, subpoena a defendant's attorney during the pendency of criminal proceedings for which he was retained and inquire as to the existence, extent, or source of his fees.
The Supreme Court's recent reiteration of a primary policy concern in assessing a sixth amendment claim indicates that a result distinct from that in Caplin & Drysdale may obtain in an attorney subpoena situation. In Wheat v. United States, 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988), the Supreme Court observed that with respect to the sixth amendment, "`the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such.'" Id. 108 S.Ct. at 1697 (quoting United States v. Cronic, 466 U.S. 648, 657 n. 21, 104 S.Ct. 2039, 2046 n. 21, 80 L.Ed.2d 657 (1984)). The subpoenaing of Mike DeGeurin under the circumstances presented here threatens the integrity of the adversarial process protected by the sixth amendment. Whereas forfeiture of fees may deprive a defendant of counsel of his choice, the subpoenaing of his attorney not only may deprive a defendant of his chosen counsel but also may turn that attorney into a witness against him. The latter occurrence, in which an adversary forcibly enlists the aid of his opponent, contravenes the principles of the adversarial system.
Accordingly, given the presumption in favor of a defendant's choice of counsel, see Wheat, 108 S.Ct. at 1700, the strong possibility that enforcement of a government-issued subpoena to Intervenor's attorney will cause counsel's disqualification during the pendency of proceedings, and the apparent absence of any overriding governmental interest, the Court concludes that Caplin & Drysdale would not preclude quashing the subpoena on sixth amendment grounds.

CONCLUSION
The grand jury has the "right and duty to procure every man's evidence." In re Grand Jury Matters, 751 F.2d 13, 16 (1st Cir.1984) (citing United States v. Dionisio, 410 U.S. 1, 9-10, 93 S.Ct. 764, 769, 35 L.Ed.2d 67 (1973)). The right may be restricted, however, by privilege, "`constitutional, common-law or statutory'", and by the Court's supervisory power under Rule 17(c) of the Federal Rules of Criminal Procedure. Id. at 17 (quoting Branzburg v. Hayes, 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972)).
Accordingly, the Court hereby concludes that the Motion to Quash shall be, and hereby is, GRANTED.
NOTES
[1] The brothers spell their last names differently.
[2] It is therefore unnecessary to determine whether the Government complied with the guidelines.
[3] "`Confidence' refers to information protected by the attorney-client privilege under applicable law, and `secret' refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client." Texas Code of Professional Responsibility, supra, DR 4-101(A).
[4] Subsequent to Jones, the Fifth Circuit refined the exception. Whereas the exception as formulated by the Jones court encompassed attorney disclosures which provided "probative links in an existing chain of evidence," Jones, 517 F.2d at 674 (emphasis added), in In re Grand Jury Proceedings (Pavlick), 680 F.2d 1026 (5th Cir. Unit A 1982) (en banc), the court deemed only those disclosures supplying the "last link" in the chain of evidence as privileged. Id. at 1027. As the court offered no explanation for the reformulation and, in fact, referred to Jones while discussing the exception, the precise significance of the modification is unclear.
[5] Some confusion exists concerning on whose behalf Mike DeGeurin is invoking the privilege. The Government, in its response to the Motion to Quash states that "the motion is unclear as to whom movant is invoking the privilege." Government's Response, supra, at 6. At this court's October 2, 1989, hearing on the Motion to Quash, Mike DeGeurin stated that he was invoking the privilege on behalf of the Intervenor, Reyes-Requena. Accordingly, this Court will consider the privilege and any exceptions thereto in light of the attorney-client relationship which the Government has conceded exists between Mike DeGeurin and Reyes-Requena. Id.
[6] The Court notes that with respect to the case law concerning the application of the attorney-client privilege to questions of client identity and fees, "[c]ourts generally do not distinguish among ... [various] fact patterns, applying case law developed in one context to the others. See, e.g., In re Osterhoudt, 722 F.2d 591 (9th Cir. 1983) (applying cases concerning the discovery of client identity to a situation involving the discovery of fee information)." Developments in the Law  Privileged Communications, 98 Harv.L.Rev. 1450, 1517-18 n. 91 (1985).

There are generally three basic fact patternstwo involving identity and one involving fees  in which adversaries, usually law enforcement officers, seek such information. In the first, a taxpayer ascertains that he owes taxes for prior periods, pays the outstanding sums anonymously through his attorney to avoid possible criminal liability, and the authorities seek the taxpayer's identity from the attorney. See, e.g., Tillotson v. Boughner, 350 F.2d 663 (7th Cir.1965); Baird v. Koerner, 279 F.2d 623 (9th Cir.1960). In the second fact pattern, an anonymous party pays the legal fees of another party who faces a criminal charge, typically drug trafficking. As in the case of anonymous tax payment, authorities seek the identity of the anonymous party, here under the assumption that the defendant was working for the anonymous party. See, e.g., In re Grand Jury Proceedings (Pavlick), 663 F.2d 1057 (5th Cir.1981), rev'd, 680 F.2d 1026 (5th Cir.1982) (en banc); United States v. Hodge & Zweig, 548 F.2d 1347 (9th Cir.1977). In the third situation, the authorities are investigating possible tax evasion by comparing information on attorney's fees, sought from the attorney, with the client's declared income. The client may have paid the attorney more money than he has declared as income. See, e.g., In re Grand Jury Proceedings (Jones), 517 F.2d 666 (5th Cir.1975).
Id.
The factual situation here varies somewhat from the preceding patterns. In this case, the Government issued a preindictment subpoena to a defendant's attorney in order to "learn the breadth of [the] criminal activity." Government's Supplemental Response to Motion to Quash Grand Jury Subpoena for Attorney of Record for Defendant Jose Evaristo Reyes-Requena, Mike DeGeurin at 2. Mike DeGeurin seeks to invoke the privilege on behalf of the defendant, not an unknown third-party benefactor. Thus, although this fact pattern differs from those of preceding cases, this Court will follow its predecessors and apply case law developed in other contexts.
[7] With respect to the sixth amendment issue, the Government also relies upon In re Grand Jury Subpoena Served upon Doe, 781 F.2d 238 (2d Cir.) (en banc), cert. denied sub nom. Roe v. United States, 475 U.S. 1108, 106 S.Ct. 1515, 89 L.Ed.2d 914 (1986), for the proposition that the probative value of third-party benefactor information outweighs any sixth amendment rights asserted by the benefactor. The Government's reliance is misplaced, however, as the Doe court held that there was no infringement of the sixth amendment right to counsel for the reason that the target's sixth amendment rights had not yet attached. Id. at 244. Specifically, the court found that no sixth amendment right to counsel arises during a grand jury investigation of an unindicted target against whom no adversary proceeding has commenced. Id. at 244. The Government here does not assert that Reyes-Requena's sixth amendment right to counsel has not yet attached.