926 F.2d 1423
 59 USLW 2618, 32 Fed. R. Evid. Serv. 472
 In re GRAND JURY SUBPOENA FOR ATTORNEY REPRESENTING CRIMINAL
DEFENDANT Jose Evaristo REYES-REQUENA, John Doe,
Intervenor-Appellant.
In re GRAND JURY SUBPOENA
FOR Mike DeGUERIN Mike
DeGuerin, Appellant,
and
John Doe, Intervenor-Appellant.
In re GRAND JURY SUBPOENA FOR ATTORNEY REPRESENTING CRIMINAL
DEFENDANT, Jose Evaristo REYES-REQUENA, United
States of America, Appellant.
 Nos. 90-2827, 90-2992, 91-2058.
 United States Court of Appeals,
Fifth Circuit.
 March 6, 1991.
 
 Charles O. Grigson, Austin, Tex., for John Doe in Nos. 90-2827, 90-2992, 91-2058.
 Henry K. Oncken, U.S. Atty., Paula C. Offenhauser, Larry Finder, Asst. U.S. Attys., Houston, Tex., for appellees.
 Gerald Goldstein, Antonio, Tex., for amicus NACDL.
 Jack B. Zimmerman, Houston, Tex., for amicus ATLA.
 Kent Shaffer, Houston, Tex., for amicus TCDLA.
 Jim E. Levine, Houston, Tex., for amicus HCCLA.
 Dick DeGuerin, Houston, Tex., for appellant in No. 90-2992.
 Ronald G. Woods, U.S. Atty., Paula C. Offenhauser, Lawrence D. Finder, Asst. U.S. Attys., Mervyn Hamburg, Washington, D.C., for appellant in No. 91-2058.
 Dick DeGuerin, Houston, Tex., for appellee in No. 91-2058.
 Appeals from the United States District Court for the Southern District of Texas.
 Before HENLEY,* KING and GARWOOD, Circuit Judges.
 KING, Circuit Judge:
 
 
 1
 In September 1990, we reversed a ruling by the district court granting a motion to quash a subpoena requiring defense attorney Mike DeGeurin (DeGeurin) to reveal the identity of an anonymous third party benefactor who paid the attorney's fees for drug defendant Jose Evaristo Reyes-Requena (Reyes-Requena). See In re Grand Jury Subpoena For Attorney Representing Criminal Defendant Jose Evaristo Reyes-Requena (Mike DeGeurin), 913 F.2d 1118 (5th Cir.1990), cert. pending (Reyes-Requena I ). In so ruling, we concluded that "[n]othing in the record reflects that this information was either a confidential communication between DeGeurin and Reyes-Requena or inescapably tied to such a communication...." Id. at 1122. After remand, the Government obtained a new subpoena directing DeGeurin to appear before the grand jury and reveal the identity and fee arrangements made by the third party benefactor. The anonymous third party benefactor intervened as "Intervenor John Doe" (Intervenor). Intervenor moved to quash the subpoena and for an in camera, ex parte hearing to establish the existence of an on-going attorney/client relationship with DeGeurin that existed prior to DeGeurin's representation of Reyes-Requena and that would be breached by the requested revelations.
 
 
 2
 The district court denied DeGeurin's and Intervenor's motions to quash and for an in camera, ex parte hearing. DeGeurin and Intervenor appeal from this ruling. DeGeurin appeared before the grand jury and revealed the identity and fee arrangements made for Reyes-Requena by a non-client third-party, but DeGeurin refused to reveal Intervenor's identity or the fee arrangements Intervenor made for Reyes-Requena. The Government moved to hold DeGeurin in civil contempt under the recalcitrant witness statute, 28 U.S.C. Sec. 1826.
 
 
 3
 At this juncture, the district court provided DeGeurin and Intervenor with their requested in camera, ex parte hearing, and concluded that the documents submitted under seal revealed the existence of an attorney/client relationship prior to DeGeurin's representation of Reyes-Requena. The district court denied the Government's motion to hold DeGeurin in contempt. See In re Grand Jury Subpoena For Reyes-Requena, 752 F.Supp. 239 (1990) (Reyes-Requena II ). Because we agree with the district court that the revelation of Intervenor's identity and fee arrangements would breach confidential communications that are intertwined inextricably with Intervenor's confidential purpose for retaining DeGeurin's services, we affirm.
 
 I. BACKGROUND AND PROCEDURE
 
 4
 Federal and local drug agents were conducting surveillance on a house in Houston, Texas when they saw two individuals load boxes into a rental car. One of those persons drove off and the other entered the house. Officers stopped the car, found cocaine, and arrested the driver. The officers then obtained and executed a search warrant for the house. Inside the house, the officers found about 160 kilograms of cocaine and various drug paraphernalia. The officers discovered Reyes-Requena sleeping on the living room floor with a loaded .357 magnum under his bedroll. The officers also found a woman named Guadelupe and a small boy.
 
 
 5
 After being advised of his rights, Reyes-Requena told a Drug Enforcement Agency officer that he had arrived from Matamoros, Mexico, two months before; that he was unemployed; that he had met an individual whom he called "Chapa;" and that Chapa had offered him the use of the house, food, and money if he would safeguard the house. Reyes-Requena refused to give a physical description of Chapa other than identifying him as a Hispanic male. Reyes-Requena admitted that he had seen boxes coming in and out of the house, but he denied knowledge of their contents and maintained that he had nothing to do with them. He also denied knowledge of the weapon found under his bedroll. Guadelupe told agents that she met Reyes-Requena in Matamoros, that she came to the United States two weeks before his arrest, and that she stayed at the house at Reyes-Requena's request.
 
 
 6
 The agents arrested Reyes-Requena, and on September 22, 1989, a magistrate conducted a preliminary hearing. Mike DeGeurin, an experienced criminal lawyer in private practice, represented Reyes-Requena at the hearing despite Reyes-Requena's apparent indigence. On that same day, a federal grand jury in the Southern District of Texas subpoenaed DeGeurin to appear on September 29, 1989, and produce records concerning his fee arrangements for representing Reyes-Requena. The grand jury requested information concerning whether a third party hired DeGeurin to represent Reyes-Requena, and if so, the identity of the fee payer and nature of the fee agreements. Six days later, DeGeurin filed a motion to quash the subpoena. He argued that the requested disclosure violated Department of Justice Guidelines, both his and Reyes-Requena's sixth amendment rights, and the attorney/client privilege. Amici curiae representing various defense-oriented organizations moved to intervene in support of DeGeurin. In a supplemental motion, DeGeurin argued that the subpoena violated Reyes-Requena's fifth amendment privilege against self-incrimination because of the "affirmative link" or "last link" doctrine. See In re Grand Jury Proceedings (United States v. Jones), 517 F.2d 666, 674 (5th Cir.1975) (attorney/client privilege attaches to matters such as identity of client and fee information when so much of the substance of the communications is already in the Government's possession that additional disclosures would yield substantially probative links in an existing chain of inculpatory evidence).
 
 
 7
 At an October 2 hearing, DeGeurin identified Reyes-Requena as his client, and refrained from referring to the existence of a third party benefactor. DeGeurin argued that because Reyes-Requena was merely present in the house, and the government had to prove an intent to distribute, information concerning his attorney's fees could help to incriminate him or even lead to a conspiracy charge. DeGeurin also argued that revelation of this information would violate Reyes-Requena's attorney/client privilege, violate Reyes-Requena's sixth amendment rights, and would be unduly burdensome and harassing under F.R.Crim.P. 17(c). The district court agreed, quashed the subpoena, and the Government appealed. See Reyes-Requena I, 724 F.Supp. 458 (S.D.Tex.1989).
 
 
 8
 The district court gave three reasons for quashing the first grand jury subpoena: (1) that non-disclosure was protected by the attorney/client privilege, (2) that compliance with the subpoena would be unreasonable or oppressive under F.R.Crim.P. 17(c), and (3) that the subpoena threatened to create a conflict of interest that would deprive Reyes-Requena of his sixth amendment right to counsel of his choice. Id. at 464. After the district court's order quashing the subpoena, but before we disposed of Reyes-Requena's appeal, Reyes-Requena was convicted of possession with intent to sell in excess of five kilograms of cocaine and was sentenced to fifteen years in the federal penitentiary. We acknowledged that the subpoena, issued while DeGeurin was attempting to defend Reyes-Requena, may have been oppressive and unreasonable, but we concluded that this issue had been mooted because of Reyes-Requena's conviction while his appeal was pending. Reyes-Requena I, 913 F.2d at 1129. We also concluded that Reyes-Requena's conviction mooted the district court's sixth amendment grounds for quashing the grand jury subpoena. Id. Finally, we found no impingement of the attorney/client privilege because DeGeurin never averred "that the anonymous benefactor (if there was one) was his client...." Id. at 1123. We observed that "[n]othing in the record reflect[ed] that this information [sought by the grand jury] was either a confidential communication between DeGeurin and Reyes-Requena, or inescapably tied to such a communication...." Id. at 1122.
 
 
 9
 After remand, the Government obtained a new subpoena directing DeGeurin to appear before the grand jury. DeGeurin again moved to quash the subpoena. DeGeurin now contended that he should not be required to divulge the identity of, and fee arrangements made with, an anonymous, fee-paying benefactor of Reyes-Requena who, as the district court found, was DeGeurin's client. The anonymous benefactor then intervened in the suit as Intervenor John Doe.
 
 
 10
 DeGeurin and Intervenor requested an in camera, ex parte hearing to establish the existence and nature of their attorney/client relationship. DeGeurin argued that if he were forced to go before the grand jury, he would be faced with the dilemma of refusing to divulge confidential information and risking contempt, or violating his client's confidence, thus depriving Intervenor of his attorney of choice and likely implicating the Intervenor in the very criminal matter for which Intervenor sought DeGeurin's advice and representation. DeGeurin sought to establish that Intervenor sought his advice prior to DeGeurin's decision to represent Reyes-Requena and with respect to the same criminal matter. DeGeurin argued that revealing Intervenor's true identity would violate Intervenor's attorney/client privilege and provide the "last or affirmative link" in the chain of evidence that would incriminate Intervenor. The district court refused to allow DeGeurin to submit this proof and on September 26, 1990, denied his motion to quash and for an in camera, ex parte hearing. DeGeurin and Intervenor appealed. The district court refused to stay the subpoena pending the appeal. We convened an emergency panel on September 27, 1990, and denied Intervenor's motion to stay.
 
 
 11
 DeGeurin appeared before the grand jury as scheduled, and was asked to reveal whether he or his law firm had been paid a fee to represent Reyes-Requena, and if so, the identity of the fee-payer, the amount of the fee, and the form of payment. The subpoena also directed DeGeurin to produce documents relating to the fee arrangement. DeGeurin complied in part. He revealed that $3,000 of his fee was paid by Reyes-Requena's son-in-law, a non-client third-party, but DeGeurin refused to divulge the name of, or fee arrangements made by, Intervenor.
 
 
 12
 On October 4, 1990, the Government moved to compel DeGeurin to comply with the grand jury subpoena. Accompanying the motion was a letter signed by the Assistant Attorney General of the Criminal Division authorizing an application for use immunity, thereby preventing DeGeurin from asserting the privilege against self-incrimination as a reason for refusing to reveal the identity of the fee-payer and the amount paid. DeGeurin submitted an exhibit to the district court in camera, ex parte, and under seal. This exhibit purportedly established that Intervenor in fact existed, and more importantly, had an attorney/client relationship with DeGeurin. Intervenor's response indicated that more could be shown to the district court regarding the nature of the attorney/client relationship between Intervenor and DeGeurin. Intervenor also requested the opportunity to make a more complete showing in camera and ex parte before DeGeurin was compelled to answer any further questions about Intervenor.
 
 
 13
 On October 24, 1990, the district court granted the Government's motion to compel, and ordered DeGeurin to comply fully with the subpoena duces tecum. On October 25, 1990, the grand jury issued another subpoena requiring DeGeurin to appear on November 8, 1990. The district court quashed this subpoena, but the grand jury subpoenaed DeGeurin again on November 19, 1990, requiring DeGeurin to appear on December 6, 1990.
 
 
 14
 In DeGeurin's motion to quash this subpoena, DeGeurin again requested the opportunity for an in camera, ex parte hearing and notified the court that he and Intervenor were willing to submit sealed affidavits to demonstrate the existence of an attorney/client relationship and the fact that Intervenor had sought his advice about the very matter for which the grand jury sought his testimony. DeGeurin alleged that his consultation with Intervenor made Intervenor's identity, fee arrangements, and the discussions with DeGeurin privileged communications. The district court denied Intervenor's motion to quash on December 3, 1990. In that order, the court also denied Intervenor's request to submit matters in camera, ex parte, and under seal. Intervenor filed a notice of appeal from this order on December 4, 1990. Both DeGeurin and Intervenor requested a stay, which the district court denied on December 5, 1990. The district court also denied a stay pending appeal.
 
 
 15
 On December 6, 1990, DeGeurin appeared before the grand jury and again refused to disclose the identity of Intervenor or to discuss the arrangements made with Intervenor to pay Reyes-Requena's attorney's fees. DeGeurin acknowledged only that his fee was paid in cash. Intervenor's identity and the fee arrangements were privileged, DeGeurin contended, because the Intervenor's identity and the amount of the fee were intertwined with confidential communications, and revealing Intervenor's identity would provide an affirmative link in a chain of evidence that would incriminate Intervenor.
 
 
 16
 On December 6, 1990, the Government filed a motion to compel compliance with the subpoena or to order DeGeurin confined for contempt for noncompliance. DeGeurin included sealed affidavits from himself and Intervenor with his response to the Government's motion. At a hearing on the motion, DeGeurin again stated his position that he could not answer the grand jury's questions because "another person exists; that person is a client; (he or she) came to Mr. DeGeurin for that person's own advice; and that the advice that Mr. DeGeurin gave that person was inextricably intertwined with the fee arrangements done simultaneously; and that the client consulted Mr. DeGeurin about the very problem for which both Reyes-Requena and that client sought advice." The court asked how the disclosure of the identity of the fee-payer and the amount of payment would reveal a confidential communication. DeGeurin replied that the information would provide the "last or affirmative link in a chain of already existing evidence ... that would incriminate that person." DeGeurin emphasized that Intervenor's identity and the fee arrangements for Reyes-Requena were intertwined inextricably with privileged communications because Intervenor communicated both simultaneously.
 
 
 17
 On December 11, 1990, the district court held the hearing that DeGeurin and Intervenor contend in this appeal that they should have received before DeGeurin had to appear before the grand jury. At that hearing, the district court found that DeGeurin could properly raise Intervenor's attorney/client privilege at this juncture because the existence of a third party benefactor had not been litigated previously. Reyes-Requena II, 752 F.Supp. at 241. Relying upon the sealed affidavits presented in camera, the judge found that an attorney/client privilege existed between DeGeurin and Intervenor before the first grand jury subpoena issued, and that the relationship was ongoing. Id. Intervenor had not consulted DeGeurin solely to obtain representation for Reyes-Requena, the judge concluded; "[r]ather, Intervenor retained DeGeurin to represent Reyes-Requena and Intervenor jointly for a confidential purpose...." Id. at 242. He reasoned that if DeGeurin were to reveal the Intervenor's identity, Intervenor's confidential motive for retaining DeGeurin would be exposed as apparent. Id. He noted the general rule that a client's identity and fee arrangements are not confidential, but concluded that this case fell within the settled principle that a client's identity and "fee information may become privileged if their revelation would itself reveal a confidential communication." Id. (quoting Reyes-Requena I, 913 F.2d at 1126). Based on these findings, the judge entered an order on December 17, 1990 denying the Government's motion to compel and for contempt. The Government appeals from this order. Intervenor and DeGeurin appeal from the district court's orders of September 28, and December 3, 1990, denying Intervenor's and DeGeurin's motion to quash. These appeals have been consolidated.
 
 II. ANALYSIS
 A. Jurisdiction
 
 18
 DeGeurin contends that we must dismiss the Government's appeal because the district court's order denying the Government's civil contempt motion was not a final decision under 28 U.S.C. Sec. 1291.[1] The Government contends that we must dismiss DeGeurin's appeal for want of jurisdiction and dismiss Intervenor's appeal as moot. We find that the district court's order denying the Government's motion to hold DeGeurin in contempt was a final decision for purposes of all three appeals, but conclude that both DeGeurin's and Intervenor's appeals must be dismissed as moot.
 
 
 19
 We may review an order denying a civil contempt motion only if that order is a final decision for purposes of 28 U.S.C. Sec. 1291 or falls under a statute that allows for an interlocutory appeal.[2] Sanders v. Monsanto, 574 F.2d 198, 199 (5th Cir.1978) ("Except for interlocutory matters covered by 28 U.S.C. Sec. 1292, this court has jurisdiction on appeal to review only final decisions from district courts."); Szabo v. U.S. Marine Corp., 819 F.2d 714, 716 (7th Cir.1987) ("an order of civil contempt is appealable if and only if it is either final for purposes of section 1291 or appealable under a statute allowing for the appeal of interlocutory orders"). A civil contempt motion involving a party in the course of continuing litigation generally is not a final decision whether granted or denied. Sanders, 574 F.2d at 199 (citing Doyle v. London Guarantee Co., 204 U.S. 599, 27 S.Ct. 313, 51 L.Ed. 641 (1907)). We apply this rule in order to discourage piecemeal appeals. When a civil contempt motion is not part of continuing litigation, however, as in the instant case, an order granting or denying such a motion is a final decision for purposes of Sec. 1291 because no underlying case awaits final resolution. Id. ("Contempt motions that are not part and parcel of a continuing litigation, however, are final and subject to review because with respect to the contempt issue, no further district court action occurs.").[3] We conclude, therefore, that we have jurisdiction under Sec. 1291 to hear the Government's appeal.
 
 
 20
 The Government contends, however, that the district court's denial of DeGeurin's motion to quash was not a final decision and argues that we must dismiss DeGeurin's appeal for want of jurisdiction. When the district court denies a motion to quash a grand jury subpoena duces tecum, we treat that order as non-final and require the party to resist the subpoena and appeal from the order citing the party for contempt. See United States v. Nixon, 418 U.S. 683, 690-91, 94 S.Ct. 3090, 3098-99, 41 L.Ed.2d 1039 (1974) (an order denying a motion to quash and requiring the production of evidence pursuant to a subpoena duces tecum repeatedly has been held not to be final and hence not appealable); Cobbledick v. United States, 309 U.S. 323, 324-26, 60 S.Ct. 540, 541-42, 84 L.Ed. 783 (1940) (order denying motion to quash not a final order); In re Grand Jury Proceedings, 724 F.2d 1157, 1159 (5th Cir.1984) (district court's order denying motion to quash is not a final appealable order); United States v. Grand Jury, 425 F.2d 327, 329-30 (5th Cir.1970) (district court's order denying motions to quash subpoenas duces tecum were not final decisions under 28 U.S.C. Sec. 1291).[4]
 
 
 21
 DeGeurin followed this procedure, resisted the subpoena, and obtained the district court's final decision when the district court denied the Government's motion to hold DeGeurin in contempt. We cannot hear DeGeurin's or Intervenor's appeals not because the district court's decision was not final, but because the district court, by deciding the contempt motion in their favor, granted DeGeurin and Intervenor their requested relief. The district court's denial of the Government's contempt motion had the same effect as granting DeGeurin's and Intervenor's motions to quash--it prevented the Government from acquiring the desired information.
 
 
 22
 DeGeurin and Intervenor do not argue that the district court failed adequately to protect their rights, nor that they failed to receive their requested hearing. They argue only that they should have received that relief at an earlier date. They ask, in effect, that we issue an advisory opinion, after the conflict has been resolved in their favor, stating that a district court must provide such a hearing prior to an attorney being required to appear before a grand jury. When the district court provided Intervenor and DeGeurin with their requested hearing, however, and denied the Government's motion to hold DeGeurin in contempt, it mooted DeGeurin's and Intervenor's objections to its denial of their motions to quash. Had the district court denied their motions to quash and then held DeGeurin in contempt, their appeals would have presented a live case or controversy. The district court's decision in their favor, however, prevents us from providing them with further relief, and we must dismiss their appeals as moot.[5]
 
 B. Abuse of Discretion
 
 23
 The Government argues that the district court abused its discretion by denying the Government's motion to hold DeGeurin in civil contempt because the identity of DeGeurin's client and fee arrangements were not confidential communications.[6] 6] As a general rule, client identity and fee arrangements are not protected as privileged. In re Grand Jury Proceedings (United States v. Jones), 517 F.2d 666, 670-71 (5th Cir.1975). We have recognized a narrow exception to this general rule, however, when revealing the identity of the client and fee arrangements would itself reveal a confidential communication. Reyes-Requena I, 913 F.2d at 1126 (citing Jones, 517 F.2d at 688, and In re Grand Jury Proceedings (Pavlick), 680 F.2d 1026, 1027 (5th Cir.1982) (en banc)). The district court reasoned that Intervenor's confidential motive for consulting DeGeurin was intertwined inextricably with his identity and fee arrangements. Reyes-Requena II, 752 F.Supp. at 242 (relying on Reyes-Requena I, 913 F.2d at 1124 (Jones "protect[s] a disclosure that would reveal the confidential motive for retention of the attorney.")). We agree with the district court that exposure of Intervenor's identity and fee arrangements for Reyes-Requena will expose as obvious the confidential purpose for which Intervenor sought DeGeurin's legal advice.
 
 
 24
 The Government does not attempt to argue that a client's motive for retaining an attorney is not a privileged communication. The Government contends, however, that a client's identity and the amount of fees are severable from any confidential communications and are not protected because they have been co-mingled with privileged matters. The Government, in effect, argues that we should close the narrow exception that extends the privilege to matters not ordinarily privileged when they are intertwined with privileged communications. The Government apparently fails to understand our well established precedent in this area.[7]
 
 
 25
 Clients often consult with attorneys concerning matter that they wish to keep confidential. The matter may or may not involve misconduct, and if it does involve misconduct, the client may or may not be implicated. For example, a client may wish to consult an attorney concerning adopting a child but not wish the matter to be made public. Such an individual normally will reveal the nature of his problem as well as his identity, and reasonably expects both to remain confidential. If the disclosure of the client's identity will also reveal the confidential purpose for which he consulted an attorney, we protect both the confidential communication and the client's identity as privileged.
 
 
 26
 We protect the client's identity and fee arrangements in such circumstances not because they might be incriminating but because they are connected inextricably with a privileged communication--the confidential purpose for which he sought legal advice. The purpose of the attorney/client privilege is "to encourage clients to make full disclosure to their attorneys." Fisher v. United States, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). An attorney could not expect a client to fully disclose the nature of his difficulties in such circumstances if the attorney may have to reveal the client's identity to a grand jury. At times, this privilege may prevent the Government from obtaining useful information, but "this is the price we pay for a system that encourages individuals to seek legal advice and to make full disclosure to the attorney so that the attorney can render informed advice." Matter of Grand Jury Proceeding, Cherney, 898 F.2d 565, 569 (7th Cir.1990).
 
 
 27
 The district court found, and our inspection of the sealed documents confirms, that Intervenor retained "DeGeurin to represent Reyes-Requena and Intervenor jointly for a confidential purpose," and that if DeGeurin were to reveal Intervenor's identity, "the confidential motive for Intervenor's retention of DeGeurin would be exposed as apparent." In such circumstances, we protect the anonymous client's identity not because it may incriminate the client but because disclosure would allow the Government to obtain information given to the attorney as part of a confidential communication.
 
 
 28
 The Government is not credible when it asserts that it sought only the fact of Intervenor's identity rather than confidential communications. The Government admits that it sought Intervenor's identity because DeGeurin was representing a man of meager means caught while serving in a lower echelon role in a drug trafficking operation of substantial proportion. The Government clearly sought Intervenor's identity in hopes of broadening their investigation, which was limited to Reyes-Requena, by adding more charges against Reyes-Requena and by obtaining more defendants to charge in a conspiracy. In these circumstances, the Government cannot credibly argue that it seeks merely neutral facts.
 
 
 29
 The Government also argues that DeGeurin publicly disclosed Intervenor's involvement in the drug enterprise and this disclosure defeats Intervenor's assertion of privilege. We disagree. DeGeurin stated only that Intervenor sought his advice concerning the same matter for which Reyes-Requena was arrested. DeGeurin indicated that he was concerned that revealing the name of his client would provide a link between his client and incriminating evidence that would lead to the investigation, indictment, and prosecution of his client. By making this argument, DeGeurin did not admit that Intervenor was guilty of any offense. Seeking advice about criminal activity is not an admission of guilt, nor is fear of prosecution.
 
 
 30
 Furthermore, we indicated in Reyes-Requena I that even if the anonymous benefactor were DeGeurin's client, his identity and fee arrangements are privileged only if intertwined with confidential communications made for the purpose of obtaining legal advice for the anonymous benefactor. Reyes-Requena, 913 F.2d at 1124 (emphasis added). DeGeurin rightly concluded that he could claim the privilege only by demonstrating a connection between Reyes-Requena's attorney's fees and the confidential purpose for which Intervenor sought DeGeurin's legal advice. DeGeurin could demonstrate that connection only by revealing that Intervenor consulted him concerning the very matter for which Reyes-Requena had been charged. We do not accept the Government's catch-22 argument that by revealing the information necessary to assert the privilege, DeGeurin destroyed the privilege.
 
 
 31
 The Government would place chilling consequences on the very act of obtaining legal advice. We acknowledge the importance of the Government's need to obtain information. Our precedent in this circuit, however, and apparently every other circuit, counterbalances the Government's legitimate need for information with the equally important need to encourage full and frank disclosure to attorneys. We decline the Government's invitation to reweigh these important and competing interests in the instant case. Intervenor's identity may not be privileged merely because its revelation would be incriminating, but neither does it lose its privilege merely because the information would be useful to the Government. As we stated in Jones and confirmed in Reyes-Requena I, the attorney/client privilege protects the client's identity from disclosure by his attorney when the client's identity is inextricably intertwined with confidential communications. Intervenor and DeGeurin have submitted sealed documents that convinced the district court that they fell within this narrow exception to the general rule. The district court's findings were not clearly erroneous, and we conclude that the district court did not abuse its discretion by denying the Government's motion to hold DeGeurin in contempt.
 
 III. CONCLUSION
 
 32
 For the foregoing reasons, we affirm the district court's order denying the Government's motion to confine DeGeurin for contempt, and dismiss DeGeurin's and Intervenor's appeals as moot.
 
 
 33
 91-2058--AFFIRMED.
 
 
 34
 90-2827--DISMISSED.
 
 
 35
 90-2992--DISMISSED.
 
 
 
 *
 Circuit Judge of the Eighth Circuit, sitting by designation
 
 
 [1]
 Intervenor, however, concedes jurisdiction based on In re Grand Jury Subpoena (Kent), 646 F.2d 963 (5th Cir.1981)
 
 
 [2]
 28 U.S.C. Sec. 1291 grants jurisdiction for the courts of appeals over all final decisions of the district courts
 
 
 [3]
 DeGeurin's reliance on U.S. v. Martin Linen Supply Co., 485 F.2d 1143 (5th Cir.1973) is misplaced. Martin Linen Supply Co. was an antitrust case and our lack of jurisdiction was based on the Expediting Act, 15 U.S.C. Sec. 29, which provides for exclusive appeal to the Supreme Court from final judgments in civil antitrust actions brought by the United States in the district courts. Martin Linen Supply Co., 485 F.2d at 1144. More pertinent to the instant case is In re Grand Jury Subpoena (Kent), 646 F.2d 963 (5th Cir.1981), in which the district court denied the Government's motion to order a witness to show cause why she should not be held in civil contempt for failing to comply with a grand jury subpoena duces tecum. We treated the district court's denial of the Government's motion for contempt as an order partially quashing the subpoena and found jurisdiction to hear the appeal under either Sec. 1291 or Sec. 3731. (18 U.S.C. Sec. 3731 allows the Government to appeal from a district court order suppressing or excluding evidence in a criminal case). We reasoned that as a practical matter the district court's order either excluded the evidence within the meaning of Sec. 3731, or was a final decision within the meaning of Sec. 1291 because it denied the grand jury all access to the requested information. Id. at 968
 
 
 [4]
 The Government concedes, however, that Intervenor's appeal falls within a well-recognized exception to the rule against allowing an appeal from a district court's order refusing to quash a subpoena duces tecum. We held in In re Grand Jury Proceedings in the Matter of Fine, 641 F.2d 199, 202-03 (5th Cir.1981), that an order refusing to quash a subpoena is a final decision under 28 U.S.C. Sec. 1291 for purposes of an unnamed client-intervenor's appeal. We reasoned:
 If the attorney will submit to a contempt citation rather than testify, the efficient administration of justice is best served by hearing the client-intervenor's appeal immediately, rather than wait for an appeal of the contempt judgment against the attorney. If the attorney will testify rather than risk contempt, the client-intervenor's appeal is most certainly proper because there will be no later opportunity to appeal and the order is definitely "final" as to the client.
 Id. at 202. Intervenor's appeal clearly falls within this exception to the general rule. The Government argues, however, that Intervenor's appeal is moot. We agree, but conclude that DeGeurin's appeal must be dismissed for the same reason.
 
 
 [5]
 DeGeurin's and Intervenor's appeals would be moot even were we to decide that the district court abused its discretion by denying the Government's motion to hold DeGeurin in contempt. DeGeurin and Intervenor argue only that they should have had their in camera, ex parte hearing prior to the district court's decision on their motions to quash. They have obtained that hearing
 
 
 [6]
 We review the district court's findings of fact under the clearly erroneous rule. Fed.R.Civ.P. 52(a) (findings of fact by the district court will not be set aside unless clearly erroneous). We review the district court's decision not to hold a witness in civil contempt under the recalcitrant witness standard for abuse of discretion. See In re Grand Jury Proceedings (Mallory), 797 F.2d 906 (10th Cir.1986)
 Section 1826, by providing that a court "may" find a recalcitrant witness in contempt, leaves to the reasonable discretion of the trial court the grant of the denial of a contempt motion. Thus, in reviewing the trial court's finding in a contempt case, this Court is "limited to determining whether the ruling of the district court amounts to an abuse of discretion."
 Id. at 907 (quoting V.T.A., Inc. v. Airco, Inc., 597 F.2d 220, 226 (10th Cir.1979).
 
 
 [7]
 The district court reasoned that the question of whether an attorney can be compelled to disclose the identity of an anonymous fee-paying client is a matter of first impression in this circuit. We disagree. Our decision in this case is firmly based on our opinion in In re Grand Jury Proceedings (United States v. Jones), 517 F.2d 666 (5th Cir.1975), the line of cases interpreting Jones, and especially our recent opinion in Reyes-Requena I. We have no need to rely upon the factually similar case from the Seventh Circuit, Matter of Grand Jury Proceeding, Cherney, 898 F.2d 565 (7th Cir.1990), although we find nothing in Cherney inconsistent with our opinion