**UNITED STATES of America,
Petitioner/Appellee,**

v.

**Victor SHERMAN,
Respondent/Appellant.**

**No. 79–3595.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 2, 1980.

Decided Sept. 8, 1980.

Donald M. Re, Los Angeles, Cal., argued, for respondent/appellant.

* The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

Stanley S. Shaw, Jr., Washington, D. C., argued, for petitioner/appellee.

Before CHOY, ALARCON, Circuit Judges, and SOLOMON,* District Judge.

ALARCON, Circuit Judge:

This is an appeal from an order of the United States District Court for the Central District of California, dated August 20, 1979, which directed the appellant, attorney Victor Sherman, to comply with an Internal Revenue Service summons. Sherman is the attorney for the target of an IRS investigation of net worth for the purpose of determining income tax liability. The summons seeks disclosure of the amount of the legal fees paid by the client to Sherman in 1977.

Sherman resisted the summons in the district court on the basis that (1) enforcement of the summons would violate the attorney-client privilege and (2) that the summons was issued for an improper purpose and should not be enforced.

On appeal, he renews the former argument and, in addition, contends that the district court erred in denying his request for an evidentiary hearing on the issue of whether it was IRS policy to instigate net worth investigations for individuals charged or convicted in large drug trafficking cases. This information, according to appellant, would have been relevant evidence to show that it was likely that appellant and his client would have discussed tax matters at the very outset of their consultations regarding the criminal charges. The establishment of this fact, appellant claims, is essential to his argument that the fee arrangement between himself and Quinn is protected by the attorney-client privilege.

## I. BACKGROUND FACTS

On March 14, 1979, Martin D. Lipman, a revenue agent for the IRS, served a sum-

mons on Sherman, pursuant to Section 7602 of the Internal Revenue Code of 1954.[1] The summons directed Sherman to appear before Lipman and to produce information with respect to legal fees paid during 1977 by John F. Quinn. Sherman had originally been retained by Quinn in relation to criminal drug charges. Following Quinn's conviction on the criminal charges, Sherman continued to represent him with respect to tax proceedings brought by the IRS.

When Sherman refused to produce the documents the Government filed a petition in district court seeking enforcement of the summons. The petition was accompanied by Lipman's written declaration, made under penalty of perjury, declaring (1) that the summons was issued pursuant to a valid tax examination, conducted "solely for civil purposes," (2) that the summons had been properly issued and served (3) that the material sought was relevant to a determination of Quinn's tax liabilities by means of the net worth method, and (4) that the information was not already in the possession of the IRS. The declaration also noted that Sherman had appeared in response to the summons but had failed to produce the requested material.

On June 22, 1979 the district court entered an order to show cause directing Sherman to respond to the petition. Sherman filed a response on July 9, 1979, in which he argued that he was not required to comply with the summons because the material sought was protected by the attorney-client privilege.

A hearing was held on the show cause order on August 13, 1979. Sherman made an offer of proof that Lipman, if permitted, would testify that it was the custom and practice of the IRS to conduct civil or criminal investigations into the tax liability of individuals who had been convicted of major narcotics transactions. A further offer of proof was made by Sherman, that he himself would testify that when initially contacted by Quinn in regard to representation in the drug case, the possibility of a future IRS investigation was contemplated and his fee was set accordingly. The court denied Sherman's request to allow testimony to be taken from Lipman and refused Sherman's testimony concerning the nature of his relationship with Quinn. The court took the matter under submission.

On August 20, 1979, the court entered the order appealed from enforcing the summons. Sherman subsequently filed a motion for reconsideration. Following a second hearing, the district court denied the motion for reconsideration and stayed enforcement of the judgment to October 17, 1979 on the condition that Sherman file, under seal, the summoned documents with the district court. On October 25, 1979 this court entered an order granting a stay of compliance pending appeal and establishing an expedited schedule for this appeal.

## II. *ATTORNEY–CLIENT PRIVILEGE*

"As a general rule, where a party demonstrates that there is a legitimate need for a court to require disclosure of such matters, the identity of an attorney's clients and the nature of his fee arrangements with his clients are not confidential communications protected by the attorney-client privilege." (*United States v. Hodge and Zweig*, 548 F.2d 1347, 1353 (9th Cir. 1977). However,

1. Title 26, United States Code, Section 7602 reads, in pertinent part:

"For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—

(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody or care of books of account containing entries relating to the business of the person liable for tax . . . to appear before the Secretary or his delegate . . . and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry . . . ."

this principle of nonconfidentiality is subject to this important exception: "A client's identity and the nature of that client's fee arrangements may be privileged where the person invoking the privilege can show that a strong probability exists that disclosure of such information would implicate that client in the very criminal activity for which legal advice was sought." *United States v. Hodge and Zweig, supra,* 548 F.2d at 1353, citing *Baird v. Koerner,* 279 F.2d 623, 630 (9th Cir. 1960).) Appellant seeks to fit this case within the exception.

In *Baird v. Koerner, supra,* this court addressed a unique factual situation. Baird, an attorney, refused to answer a question posed to him by the appellee, Koerner, a Special Agent of the IRS. Specifically, Baird was asked to identify persons on whose behalf he had transmitted a cashier's check to the Director of Internal Revenue in the amount of $12,706.85. This sum represented taxes determined by accountants to be due based upon their conclusion that the undisclosed taxpayers had filed returns which were understated as to the amount of tax owed. No investigation was in progress at that time regarding these taxpayers. The payment was made on their behalf in order to place them in the most favorable position possible should criminal charges be brought by the IRS.

In *Baird,* the court concluded that under the circumstances then present ". . . a disclosure of the persons employing the attorney-appellant would disclose *the persons paying the tax* ; the fact of payment indicates clearly what is here specifically admitted, that an additional tax was payable and that the unknown clients owed it . . . [Revealing the clients' names] would disclose the 'ultimate motive of litigation' which Wigmore says the privilege should protect." (Emphasis added.) (279 F.2d at 630.)

In this case, appellant does not argue that disclosure of fees paid to him by Quinn will implicate Quinn in any further drug violations. Rather, he asserts that when Quinn first sought legal advice in regard to the drug charges, the possibility of an IRS investigation into tax liability was discussed. It is this discussion of tax liability that appellant claims brings this case within the ambit of the *Baird* exception.

Before discussing the applicability of the *Baird* exception, we must recognize that the district court did not believe appellant's representation that taxes were discussed at the outset of appellant's employment by Quinn. The court's conclusion that appellant was being somewhat "disingenuous" in his argument stems from the fact that the issue was not raised by appellant until the hearing on the show cause order. In his written response to the order to show cause, appellant represented that ". . . the facts demonstrate a continuing and ongoing attorney-client relationship between respondent [Sherman] and Quinn. *At the present time,* that relationship encompasses representation concerning 'net worth' investigation conducted by the government." (Emphasis added.) However, at the hearing, appellant represented that his discussions with Quinn regarding tax liability commenced from the very outset of their relationship. By this appellant sought to prove that disclosure of the fees paid by Quinn in 1977 would implicate Quinn in possible wrong-doing in the very area in which the legal advice was obtained—tax liability.

An appellate court will not set aside a finding by the trial court unless it is found to be clearly erroneous. Fed.R.Civ.P. 52(a); *World Airways, Inc. v. Intern. Broth., etc.,* 578 F.2d 800, 802 (9th Cir. 1978). We are particularly mindful of this principle when such a finding is based upon the evaluation of the credibility of a witness, a function inherently within the expertise of a trial court. The district court judge found that tax liability was not discussed in 1977. Nonetheless, even a contrary finding by the district court would not require that we reach a different result as to the inapplicability of the attorney-client privilege in this case. Even assuming that Sherman and Quinn discussed the possibility of an IRS net worth investigation at their first meeting, the *Baird* exception does not apply to the facts at hand.

First, any expectation of confidentiality Quinn may have had as to the amount of the fee paid was ill-founded. As pointed out by the Government, fees paid for medical or other professional services are not privileged from disclosure. Appellant has failed to advance a legitimate reason to attach such a privilege to the amount of fees paid to a lawyer. Certainly the attorney-client privilege itself, which exists to promote freedom of consultation with legal advisors by clients, does not support protection of the *amount* of the fee paid for the services rendered. The consultations for which the fees were charged in 1977 will remain privileged despite a requirement that the fee paid therefore must be disclosed.

Second, the facts in this case are clearly distinguishable from those that were before this court in *Baird*. In *Baird*, the IRS was seeking the *identity* of an attorney's client so as to implicate him in the crime of tax evasion, for which there was no pending investigation or litigation. In this case, appellant has conceded that disclosure of the amount of the fee paid to him by Quinn will not implicate Quinn in any further narcotic transactions. Furthermore, appellant's client, Quinn, is already under civil investigation to determine tax liability. The information sought by the IRS is part of that body of information every citizen has a legal duty to disclose. That Quinn may not have reported the income he used to pay Sherman, or that once disclosed, the amount of legal fees paid will be used to determine Quinn's ultimate tax liability does not justify a cloak of confidentiality any more than if the fee had been paid to a physician or a dentist.

In this case, the fact that fees were paid and the identity of the person paying the fees are known. Disclosure of the *amount* of those fees will not result in implicating Quinn in any known prior criminal activity. Therefore, the information is not protected by the limited exception to the rule of non-confidentiality set out in *Baird*.

## III. *EVIDENTIARY HEARING*

Appellant claims that the district court erred in denying appellant an evidentiary hearing on the issue of whether the IRS maintained a policy of investigating persons charged with and/or convicted of large scale drug transactions for possible tax liability. We disagree.

This court has held that the purpose of an evidentiary hearing in regard to enforcement of an IRS summons ". . . is to sift out those rare cases where bald allegations of harassment or improper purpose can be substantiated . . ." *United States v. Church of Scientology of California*, 520 F.2d 818, 824 (9th Cir. 1975). We found in that case that ". . . the Church's allegations of bad faith harassment by the Service, though thin, raised sufficient doubt about the Service's purposes to require the district court to hold a limited evidentiary hearing . . ." (520 F.2d at 825.) In this case, Sherman did not seek an evidentiary hearing to prove that the summons was issued for an improper purpose. Rather, he sought to show, through testimony of Agent Lipman, that the Service made a practice of conducting income tax investigations of convicted drug traffickers. Through establishment of this "fact" he then proposed to show (1) that his earliest conversations with Quinn included discussion of the possibility of a "net worth" investigation and (2) that the fee paid for these consultations, was protected by the attorney-client privilege. We have determined that disclosure of the amount of fee paid to Sherman does not come within the attorney-client privilege. Thus the testimony of Agent Lipman would have served no useful purpose.

The judgment of the district court is AFFIRMED.