**In re Grand Jury Subpoena Issued to Gerson S. HORN.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Gerson S. HORN, Defendant–Appellant.**

**No. 91–15577.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 15, 1992.

Decided Oct. 7, 1992.

As Amended on Denial of Rehearing Nov. 25, 1992.

David A. Nickerson, Mazer & Nickerson, San Francisco, Cal., for defendant-appellant.

William T. McGivern, Jr., U.S. Atty., Rory K. Little, Harry P. Litman and Catharine M. Goodwin, Asst. U.S. Attys., San Jose, Cal., for plaintiff-appellee.

Before: FERGUSON, REINHARDT, and KOZINSKI, Circuit Judges.

REINHARDT, Circuit Judge:

Gerson Horn, an attorney, appeals from an order holding him in contempt for refusal to comply with a subpoena duces tecum after his motion to quash the subpoena was denied. Because the subpoena issued to Horn is so sweeping that it unquestionably covers a great deal of material that is protected by the attorney-client privilege, because the subpoena contains the impermissible request that Horn provide the grand jury with a description of all documents for which the privilege is claimed and an explanation as to his reasons for claiming the privilege, and because the government has not made a *prima facie* showing that the crime-fraud exception to the privilege applies, we conclude that Horn was not required to submit any of the documents for *in camera* inspection by the district court. Accordingly, we reverse.

I

Horn is a criminal defense attorney who practices in Beverly Hills, California. The dispute before us arises out of a federal investigation of certain financial transactions involving one of Horn's clients, Doe, as well as a number of other individuals who may or may not be Horn's clients.

On May 15, 1990, a federal grand jury issued a subpoena duces tecum to Horn naming fourteen individuals and two corporations. The subpoena sought production of "[a]ny and all records, papers and/or documents pertaining to financial transactions by, with, between or on behalf of [the named individuals and corporations], and/or any and all businesses associated with the above-named persons or entities, for the period of January 1, 1984, through the present...." The subpoena also specifically requested Horn to produce documents relating to fee arrangements between himself and any of the named individuals or corporations, and documents "relating to any funds or anything of value held in any trust account(s)" for any of the named individuals or corporations. The subpoena stated that it did not intend to request privileged documents, and that if Horn thought that privileged documents

were called for he should describe those documents and his reasons for believing they were privileged to the grand jury.[1]

Horn moved to quash the subpoena on the grounds that the subpoena was overbroad and unreasonable in violation of Federal Rule of Criminal Procedure 17, that compliance with the subpoena would violate the attorney-client privilege, and that the subpoena violated his fifth amendment privilege against self-incrimination. The district court denied the motion to quash and ordered Horn to produce for *in camera* inspection any documents that he claimed were protected either by attorney-client privilege or by his fifth amendment privilege.

The denial of a motion to quash a subpoena is immediately appealable only if the party served with the subpoena refuses to comply and is held in contempt. *United States v. Ryan*, 402 U.S. 530, 532, 91 S.Ct. 1580, 1581, 29 L.Ed.2d 85 (1971); *In re Grand Jury Subpoenas Dated December 10, 1987*, 926 F.2d 847, 853 (9th Cir.1991). Accordingly, Horn notified the government and the court of his refusal to comply with the subpoena and requested that a contempt order issue. The government stipulated that Horn was in contempt of the district court order to produce the documents. The district court issued the requested contempt order, but stayed its execution pending our final decision on appeal. This timely appeal followed. On appeal, Horn does not raise his fifth amendment privilege against self-incrimination argument, but only the overbreadth and attorney-client privilege arguments.

## II

Horn argues that compliance with the request for production of all documents relating to fee arrangements and trust accounts would violate the attorney-client privilege for two reasons. First, he argues, it would require him to identify which of the individuals named in the subpoena are his clients, thereby incriminating those individuals. He admits without naming any names that, in addition to Doe, five of the fourteen individuals listed in the subpoena are his clients. Second, he contends that compliance with the subpoena would result in the disclosure of confidential attorney-client communication. We address each argument in turn.

■ "The purpose of the attorney-client privilege is to protect every person's right to confide in counsel free from apprehension of disclosure of confidential communi-

---

1. The full text of the subpoena reads as follows:

Any and all records, papers and/or documents pertaining to financial transactions by, with, or on behalf of Doe, [thirteen other individuals, and two corporations], and/or any and all businesses associated with the above-named persons or entities, for the period of January 1, 1984, through the present, including but not limited to the following:

a) Receipts, billing records, charge forms, invoices, titles of assets acquired or disposed of, financial statements, retained copies of income tax returns, cancelled checks or other mediums of payment or receipt; any and all Currency Transaction Reports filed;

b) Any records or documents reflecting or relating to the purchase of any item including a Mercedes–Benz automobile in 1985 or 1986 by Gershon Horn, or anyone or any entity on his behalf, from Doe or [a named corporation], or anyone or any entity on the behalf of Doe or [the corporation];

c) Any records or documents reflecting or relating to any thing of value paid or tendered for legal and/or non-legal services performed on behalf of Doe or anyone or any entity on his behalf, or on behalf of others by or for Doe or anyone or any entity on his behalf; and

d) Any records or documents reflecting or relating to any funds or any thing of value held in any trust account(s) for Doe or for anyone or any entity on his behalf.

e) Complete descriptions of the form of payment (check numbers, cashiers check numbers, travelers check numbers, denomination of cash, etc.) for all payments made for, by, or on behalf of the above-named persons or corporations.

This subpoena is not intended to request documents which are privileged, i.e. private communication and letters between the attorney and client. If such documents are requested, for which the position of the subpoenaed witness is that they are privileged, it is requested that said documents be described and the basis of privilege indicated (as part of the testimony in response to this subpoena).

cations." *In re Grand Jury Subpoena (Osterhoudt)*, 722 F.2d 591, 593 (9th Cir. 1983) (citing *United States v. Sherman*, 627 F.2d 189, 192 (9th Cir.1980); *Baird v. Koerner*, 279 F.2d 623, 629–30 (9th Cir. 1960)); *see also Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). Information regarding the amount paid for legal services or the form of payment ordinarily does not disclose the subject matter of the professional consultation. Similarly, the identity of a client usually does not indicate the purpose for which legal advice was sought or reveal any subsequent confidential communications made during the course of the attorney-client relationship. Accordingly, the attorney-client privilege ordinarily protects neither a client's identity nor information regarding the fee arrangements reached with that client. *Osterhoudt*, 722 F.2d at 593; *Sherman*, 627 F.2d at 191–92.

The general rule described in *Osterhoudt* and *Sherman* contains an obvious exception, however. An attorney may invoke the privilege to protect the identity of a client or information regarding a client's fee arrangements if disclosure would "convey[ ] information which ordinarily would be conceded to be part of the usual privileged communication between attorney and client." *Baird v. Koerner*, 279 F.2d 623, 632 (9th Cir.1960). Thus, for example, the identity of a client is privileged information if revelation of that identity would constitute an acknowledgement of guilt of the offense that led the client to seek legal assistance. *Id.* at 633. Fee information may be privileged if it would "provide the 'last link' in the chain of evidence incriminating the client." *In re Grand Jury Subpoenas Duces Tecum (Lahodny)*, 695 F.2d 363, 365 (9th Cir.1982) (quoting *In re Grand Jury Proceedings (Pavlick)*, 680 F.2d 1026, 1027 (5th Cir.1982) (en banc)).

█ Horn argues that the identities and fee arrangements of his five unnamed clients are privileged under *Baird* and *Lahodny* because disclosure of the information would incriminate them in the offense under investigation. In light of our prior opinions regarding the scope of the *Baird*

exception, we must reject Horn's argument. As we explained in *Osterhoudt* and *Sherman*, the *Baird* exception is an extremely narrow one. Otherwise unprotected information does not become privileged merely because that information might provide evidence of a client's wrongdoing. *Osterhoudt*, 722 F.2d at 593; *Sherman*, 627 F.2d at 192. The terms "confidential" and "incriminating" are not synonymous. In order to qualify for the protection afforded by the attorney-client privilege, information regarding client identity or legal fees must be "in substance a disclosure of the confidential communication in the professional relationship between the client and the attorney." *Osterhoudt*, 722 F.2d at 593. Neither the identities of Horn's five clients nor the bare financial details of their fee arrangements with Horn satisfy that standard. Because the government's request for information was not confined to those items, however, that conclusion does not end our inquiry.

█ The subpoena issued to Horn does not simply request information about the amounts paid for legal services and the form of payment. Rather, it demands "[a]ny records or documents reflecting or relating to any thing of value paid or tendered for legal ... services" and "[a]ny records or documents reflecting or relating to any funds or any thing of value held in any trust account(s)," as well as "all records, papers, and/or documents pertaining to financial transactions by" the clients. The last category, which constitutes the first part of the subpoena, is specifically not limited to transactions relating to legal fees or trust funds. On its face, the quoted language clearly encompasses information protected by the attorney-client privilege.

In order to comply fully with the specific requests contained in the subpoena, Horn would be required to produce letters of consultation and retainer agreements describing the intended scope of the attorney-client relationship, billing records describing the services performed for his clients and the time spent on those services, and any other attorney-client correspondence

relating to the performance of legal services and the rates therefor. Such documents may reveal the client's motivation for seeking legal representation, the nature of the services provided or contemplated, strategies to be employed in the event of litigation, and other confidential information exchanged during the course of the representation. Accordingly, we have held, in clear and unambiguous language, that a demand for such documents constitutes "an unjustified intrusion into the attorney-client relationship." *In re Grand Jury Witness (Salas)*, 695 F.2d 359, 362 (9th Cir.1982). In addition, the subpoena's opening request for "all record, papers, and/or documents pertaining to financial transactions" would require Horn to produce for the grand jury requests by his clients for information and advice about all proposed financial transactions and all of Horn's responses to such requests, including the clients' descriptions of the nature of the proposed transactions and Horn's opinions about their legality. In sum, the subpoena requires Horn to produce *all* the information in his files concerning *all* financial transactions *by* or among 16 entities (plus all associated businesses) over a period of approximately 6½ years. Thus, the subpoena issued to Horn by the government requests an almost unlimited amount of information, much of which falls squarely within the area of sanctuary created by the attorney-client privilege.

■ Nor does the final clause of the subpoena, which disclaims any intent to discover privileged material, cure the intrusion. The disclaimer clause requests Horn to describe any documents for which the privilege is claimed in his testimony before the grand jury. That is not the law. Descriptions of privileged documents, however general in nature, inevitably convey some information about the purpose of the attorney-client relationship—information that is, as our prior discussion makes clear, shielded from the government's reach. For that reason, we have never required individuals who attempt to assert the attorney-client privilege with respect to particular documents to provide the grand jury with a description of those documents and the reasons they believe them to be privileged. To the contrary, we have permitted those claiming the privilege to submit the contested documents for *in camera* inspection by the court. The government is, we may safely presume, not unaware of that practice and the reason for its adoption.

■ Horn did not submit any of the contested documents for *in camera* inspection by the court, and we must consider whether his claim of privilege, however meritorious, nonetheless fails in light of his refusal to do so. Blanket assertions of attorney-client privilege in response to a subpoena duces tecum are strongly disfavored. *Salas*, 695 F.2d at 362. "The proper procedure for asserting the attorney-client privilege as to particular documents, or portions thereof, [is] for [the individual] to submit them *in camera* for the court's inspection, providing an explanation of how the information fits within the privilege." *Salas*, 695 F.2d at 362. Upon submission of the contested documents, the court may examine them and issue a protective order with respect to those that it concludes are shielded from disclosure. *Id.* Had the government made a reasonable effort to exclude clearly privileged documents from its request for information, Horn's refusal to follow the established procedure for invoking the privilege would be the end of the matter.

We decline to hold, however, that the government may interpret the restriction on a subpoenaed witness's right to invoke the attorney-client privilege as license to discount the privilege entirely when formulating its request for information. The presumption of legitimacy that is accorded to grand jury investigations does not relieve the government of its obligation to attempt to prepare a proper subpoena—to make a reasonable effort to request only those documents that are relevant and non-privileged, consistent with the extent of its knowledge about the matter under investigation. The subpoena at issue here seeks

the widest possible range of privileged information—all information relating to clients' financial transactions—by and between a large number of entities over a lengthy period of time—over 6½ years. To compel Horn to present all of that material to the district court with explanations as to each of the privileged portions, in the absence of any good faith effort by the government to draw a narrow and lawful subpoena, would constitute an unreasonable and undue burden upon the subpoenaed witness. Horn should not be required to describe to the district court documents which the government knows in advance are beyond its reach, and he certainly may not be required to provide the grand jury with a description of those documents and an explanation as to why they are privileged.

The government argues, finally, that the crime-fraud exception to the attorney-client privilege may apply, but that it need not make the showing required of it with respect to that exception until the district court has determined which, if any, of the documents are privileged. Whatever the merits of the government's argument, it does not advance its cause here. Before Horn can be required to submit the type of information requested here to the court, a proper subpoena would have to be issued. The present subpoena is invalid and may not be used for any purpose. Accordingly, Horn was not required to produce the requested documents for *in camera* inspection by the district court and his failure to do so does not defeat his appeal.

The judgment of contempt is REVERSED, and the matter REMANDED for the entry of an order quashing the subpoena.