**In re SUBPOENA TO TESTIFY BEFORE the GRAND JURY,**

**Thomas J. ALEXIOU, Witness–Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

No. 94–35401.
GJ–94–0163–WFN.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 3, 1994.

Decided Nov. 2, 1994.

Dennis C. Cronin (argued), and Carl Maxey (on the briefs), Maxey Law Offices, Spokane, WA, for appellant.

Thomas O. Rice, Asst. U.S. Atty., Spokane, WA, for appellee.

Aaron L. Lowe, Aaron L. Lowe & Associates, Spokane, WA, for amicus.

Before ALARCÓN, BEEZER and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

An attorney was subpoenaed to produce material before a grand jury which he obtained from a client. The district court ruled that the attorney-client privilege would not be violated, and denied a motion to quash. We affirm.

## I. FACTS

Mr. Alexiou, an attorney, deposited money in his law firm bank account. The deposit included a $100 bill which turned out to be counterfeit. The Secret Service eventually contacted him, asking for the identity of the person who passed the bill. Mr. Alexiou consulted the Washington Rules of Professional Conduct for attorneys and decided that he could not ethically respond to the inquiry. His concern, based on his own examination and consultation with staff counsel for the Washington State Bar Association, was that the identity of a client was secret and could not be disclosed without a court order. In a letter to the Assistant United States Attorney on the case, Mr. Alexiou explained that:

> Lastly, the client simply retained us to represent him, paying a modest retainer for modest events. All violations were traffic with the exception of a misdemeanor assault charge. The client made no disclosure as to the source of the money to us. From what the bank has advised, there was one questionable bill amongst the amount paid which now is decidedly counterfeit and that is all I can tell you. Under the advice of the Washington State Bar Association Ethical Legal Department and pursuant to the Rules of Professional Conduct we are bound to make no disclosure at this time.

Despite Mr. Alexiou's independent research suggesting that the information requested would be confidential, the Assistant United States Attorney obtained a subpoena duces tecum, commanding Mr. Alexiou to appear before the grand jury to testify, and to bring with him the "name, address, date, and amount of money received from the person who retained your services by giving you a counterfeit $100 federal reserve note." Mr.

Alexiou moved to quash on grounds of attorney-client privilege. In his affidavit, Mr. Alexiou said:

> I have no personal knowledge of any individual providing an allegedly counterfeit 100 dollar federal reserve note to Maxey Law Offices. I rarely accept cash from clients for retainer fees. This is handled by others in the office.
>
> My lack of first-hand knowledge notwithstanding, this individual deposited monies with Maxey Law Offices for representation for legal advice from a professional attorney. In this capacity, the individual provided information otherwise unnecessary including but not limited to his name and address in order to communicate. These disclosures were made in confidence by this individual and intended to be permanently protected from disclosure by the attorney without the client's consent. The individual did not waive that privilege.
>
> I hold my obligation to a client above any obligation to a grand jury. The sanctity of confidential, communications between client and attorney is the sine qua non of the legal profession. I do not wish to be sanctioned by my licensing agency, the Washington State Bar Association, and I fear that I will be sanctioned if forced to comply with this subpoena.

At the hearing on the motion to quash, the Assistant United States Attorney disputed Mr. Alexiou's suggestion that his client's identity was privileged. He told the district judge that it was important to contact Mr. Alexiou's client, because he could help provide information about similar counterfeit bills that had been passed in the Spokane area. He denied that Mr. Alexiou's identification of his client would be the "last link" in the chain of evidence necessary to indict the client, because the government's counterfeiting case would still require proof that the bill was passed with the knowledge that it was fake and with the intent to defraud. He explained that many people, including bankers, had passed these bills innocently.

The district court denied the motion to quash. It held that:

1. The subpoenaed attorney's Motion to Quash the Subpoena to Testify before the Grand Jury is DENIED. The information sought by the subpoena does not represent a confidential professional communication. *In re Grand Jury Subpoenas v. Hirsch,* 803 F.2d 493, 497 (9th Cir.1986).

Mr. Alexiou brought an expedited appeal to this court. We affirm.

## II. ANALYSIS

### A. Jurisdiction

■ As a threshold matter, we must determine whether or not we have jurisdiction over this appeal. Generally "one to whom a subpoena is directed may not appeal the denial of a motion to quash that subpoena but must either obey its commands or refuse to do so and contest the validity of the subpoena if he is subsequently cited for contempt on account of his failure to obey." *United States v. Ryan,* 402 U.S. 530, 532, 91 S.Ct. 1580, 1581, 29 L.Ed.2d 85 (1971); *In re Grand Jury Subpoena (Horn),* 976 F.2d 1314, 1316 (9th Cir.1992). There is, however, an exception to this rule, based on *Perlman v. United States,* 247 U.S. 7, 13, 38 S.Ct. 417, 419, 62 L.Ed. 950 (1918), recognized in *Ryan,* 402 U.S. at 533, 91 S.Ct. at 1582. "[A]n immediate appeal is proper when the subpoena is directed to a third party, here the appellant's attorney, because that party normally will not be expected to risk a contempt citation but will instead surrender the sought-after information, thereby precluding effective appellate review at a later stage." *In re Grand Jury Subpoenas (Marger),* 695 F.2d 363, 365 (9th Cir.1982); *In re Grand Jury Proceeding (Schofield),* 721 F.2d 1221, 1222 (9th Cir.1983). In this case, Mr. Alexiou cannot be expected to accept a contempt citation and go to jail in order to protect the identity of a client who paid his fee with counterfeit money. If his client's right, if any, to secrecy of the transaction is to be protected at all, we must review the district court decision now. Review at this time appears to be required by *Perlman* as construed by *Marger* and *Schofield.*

### B. Personal Knowledge

■ Although his affidavit avers that he lacks the personal knowledge necessary to

testify about the requested records, Mr. Alexiou probably cannot avoid the disclosure on this·basis. His affidavit suggests that someone else in his law office physically receives money from clients for the attorneys' professional services and prepares bank deposits, not Mr. Alexiou. But the subpoena commands Mr. Alexiou to bring the information with him. There is nothing in the record to suggest that Mr. Alexiou lacks the authority within his law office to tell his receptionist or office manager to give him the cash receipts and other records for that day, and ask that person how the office came into possession of the $100 bill. The hearsay rule does not apply to grand jury proceedings, Fed.R.Evid. 1101; *United States v. Trass,* 644 F.2d 791, 793 (9th Cir.1981). The prosecutor will in all likelihood be able to lay sufficient foundation for grand jury purposes for Mr. Alexiou to testify about his business records and how the $100 bill came into his office.

### C. Attorney–Client Privilege

 The subpoena duces tecum and the order of the district court require that Mr. Alexiou provide the name, address, date and amount of money received from the client who used the counterfeit $100 bill. He argues that this information is privileged. The district court's denial of Alexiou's motion to quash the subpoena is reviewed for abuse of discretion. *In re Grand Jury Proceedings (Hirsch),* 803 F.2d 493, 496 (9th Cir.1986). Whether an attorney-client privilege exists is a mixed question of fact and law which is reviewed *de novo. Tornay v. United States,* 840 F.2d 1424, 1426 (9th Cir.1988).

 Generally, the attorney client privilege does not protect against disclosure of the identity of the client and the fee arrangements between lawyer and client. *In re Grand Jury Proceedings (Goodman),* 33 F.3d 1060, 1063 (9th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 187, 130 L.Ed.2d 120 (1994); *Tornay,* 840 F.2d at 1426. There is an exception where identification of the client conveys information which is itself privileged. *Baird v. Koerner,* 279 F.2d 623, 630 (9th Cir.1960). For example, if revealing the client's identity would constitute an acknowl-

edgment of guilt of the offense which led the client to seek legal assistance, then the identity of the client would be privileged. *In re Grand Jury Subpoena (Horn),* 976 F.2d 1314, 1317 (9th Cir.1992).

This exception to the no-privilege rule does not operate in every instance where disclosure of the client's identity would incriminate the client or lead to indictment. "In order to qualify for the protection afforded by the attorney-client privilege, information regarding client identity or legal fees must be 'in substance a disclosure of the confidential communication in the professional relationship between the client and the attorney.'" *In re Grand Jury Subpoena (Horn),* 976 F.2d at 1317 (quoting *In re Grand Jury Subpoena (Osterhoudt),* 722 F.2d 591, 593 (9th Cir.1983)). The exception might operate to prevent the disclosure here if the disclosure were the last link in the chain of testimony necessary to convict the client. *Baird,* 279 F.2d 623, 633. But as the government explained in its argument, the client's identity would not suffice in this case; knowledge and intent would still have to be proved. No doubt many innocent people pass counterfeit bills without realizing it. In all likelihood, Mr. Alexiou was the victim of a counterfeiter, and lost $100 which he was entitled to for his services because of the crime. His client who paid it to him may be in the same position.

In this case, the communication of the client's name and payment were entirely distinct from the matter in which the client sought the lawyer's services. It was therefore unprotected by the privilege. *In re Grand Jury Subpoena (Osterhoudt),* 722 F.2d 591, 595 (9th Cir.1983). Evidently the client retained Mr. Alexiou to represent him in traffic matters and an assault, not anything having to do with counterfeiting. If the client knew the bill was counterfeit, then Mr. Alexiou was the victim of a crime by his client entirely distinct from the matter in which Mr. Alexiou was retained. If the client did not know, then both of them were victims, and the disclosure would not implicate the client at all. Either way, the disclosure would not be the last link in a chain of evidence which would lead to conviction, and

it was not error for the district court to deny the motion to quash.

### D. New Issues on Appeal

■ Although he did not raise these claims below, Mr. Alexiou now asserts that the subpoena should have been quashed because the Assistant United States Attorney did not show a legitimate need for the information and the information request was so oppressive and unreasonable that disclosure creates conflicts with the client's Sixth Amendment right to counsel. We "decline to review an issue not properly raised below unless it is necessary to prevent a manifest injustice." *In re Marvin Properties*, 854 F.2d 1183, 1187 (9th Cir.1988). No manifest injustice will arise in this case from failing to consider these new arguments. The district judge is in the better position to consider, in the first instance, whether the requirements for a subpoena are met.

The relevant requirements are explained in *In re Grand Jury Proceeding (Schofield)*, 721 F.2d 1221, 1223 (9th Cir.1983). We have not found a place in the record where Mr. Alexiou argued that these requirements were not met. The Assistant United States Attorney told the district judge that he needed the identity of Mr. Alexiou's client because similar bills were being passed in the area. On the other hand, a client might feel a need to fire a lawyer who had testified against him before a grand jury, so such subpoenas could be a means by which prosecutors might cause distrust and changes of attorney among their adversaries. The district court, not we, takes the first look at such issues, when they are raised. There is no suggestion in the record that the Assistant United States Attorney concocted a reason to subpoena the lawyer in order to set up a conflict of interests between lawyer or client, or otherwise deprive the client of the lawyer of his choice.

This case has been argued on the basis of the common law privilege, not the Sixth Amendment right to counsel. We therefore do not have occasion to decide whether the right to counsel attached, in the absence of a charge relating to the counterfeiting. *Mor-*

*an v. Burbine*, 475 U.S. 412, 427, 106 S.Ct. 1135, 1144, 89 L.Ed.2d 410 (1986).

The subpoena is limited to the "name, address, date, and amount of money received from" the client. This is not an open-ended command. As the district judge correctly noted, "[t]he substance of the actual consultations between [Alexiou] and the fee payer ... will remain privileged despite disclosure of the requested information...." If the Assistant United States Attorney's questions exceed the scope of the subpoena and delve into privileged communications, Alexiou is not precluded by this decision from testing again whether he must comply.

AFFIRMED.