**Stephen RALLS, Esq., Witness–Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 94–16344.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 12, 1995.

Decided April 4, 1995.

Walter B. Nash, III, Nash & Jones, Tucson, AZ, for witness-appellant.

David W. Shapiro, Asst. U.S. Atty., Tucson, AZ, for appellee.

Before RUGGERO J. ALDISERT,* CHOY, SCHROEDER, Circuit Judges.

CHOY, Circuit Judge:

Stephen Ralls, Esq. ("Ralls"), a criminal defense attorney, appeals the district court's order denying in part his motion to quash a grand jury subpoena which required him to provide information regarding a client/fee-payer. Ralls also appeals from the district court's order holding him in contempt for failure to provide information pursuant to court orders.

Upon examination of Ralls' sealed affidavit, we find that the client/fee-payer's identity and the fee arrangements are inextricably linked to privileged communications and are therefore privileged. Having jurisdiction under 28 U.S.C. § 1291, we reverse the district court's partial denial of Ralls' motion to quash the grand jury subpoena, and we order that the subpoena be quashed in its entirety on the basis of attorney-client privilege.

* The Honorable Ruggero J. Aldisert, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

Furthermore, we reverse the district court's order holding Ralls in contempt for failing to comply with the subpoena.

## I

Ralls was paid by a client/fee-payer to represent Philip Bonnette ("Bonnette") at his initial court appearance and at his detention hearing. Bonnette was arrested with another individual named Victor Tarrazon–Orduno ("Tarrazon") in connection with their attempt to transport approximately 300 pounds of cocaine from Arizona to California. The Government later issued a grand jury subpoena to Ralls, seeking to discover the name of the person who hired Ralls, the amount of money paid, method of payment, the existence of any retainer agreement, and conversations with the fee-payer. Ralls moved to quash the subpoena on November 22, 1993. The district court ordered Ralls to testify regarding the fee-payer's identity and the fee arrangements, but concluded that all conversations between Ralls and the fee-payer were privileged.

Ralls filed a notice of appeal. On May 17, 1994, this court granted the Government's motion to dismiss for lack of jurisdiction because the district court had declined to issue an order holding Ralls in contempt. Following a district court order on June 14, 1994, allowing Ralls to intervene on behalf of the fee-payer, or in the alternative, holding Ralls in contempt, Ralls filed a second notice of appeal. On July 21, 1994, this court again dismissed the appeal for lack of jurisdiction because a final judgment had not been entered in the district court. On July 27, 1994, the district court entered an order holding Ralls in contempt. Enforcement of the contempt order has been stayed pending resolution of this appeal. Ralls filed a timely notice of appeal on August 2, 1994.

## II

Ralls asks us to reconsider our law applying the final judgment rule to lawyer-witnesses in his situation. *See e.g., In re Grand Jury Subpoena Dated June 4, 1985*, 825 F.2d 231, 237 (9th Cir.1987); *In re Grand Jury Subpoena (Niren)*, 784 F.2d 939, 941 (9th Cir.1986). Because Ralls is appealing from a final order of contempt, the issue is not before us and we do not address it.

■ Next, we review the district court's decision not to quash a grand jury subpoena for abuse of discretion. *In re Grand Jury Proceedings (Goodman)*, 33 F.3d 1060 (9th Cir.), *cert. denied*, — U.S. —, 115 S.Ct. 187, 130 L.Ed.2d 120 (1994); *In re Grand Jury Subpoenas (Hirsch)*, 803 F.2d 493, 496 (9th Cir.1986), *corrected by*, 817 F.2d 64 (9th Cir.1987). The party asserting the attorney-client privilege has the burden of establishing the relationship and the privileged nature of the communication. Whether the party met these requirements is a mixed question of law and fact which is reviewed de novo. *Hirsch*, 803 F.2d at 496. The district court's factual findings are reviewed for clear error. *Id.*

## III

■ Generally, the attorney-client privilege does not safeguard against the disclosure of either the identity of the fee-payer or the fee arrangement. *Goodman*, 33 F.3d at 1063. This is so because the attorney-client privilege applies only to confidential professional communications, and the payment of fees is usually incidental to the attorney-client relationship. *Matter of Grand Jury Proceeding (Cherney)*, 898 F.2d 565, 567 (7th Cir.1990). However, a narrow exception to the general rule of disclosure exists.

An attorney may invoke the privilege to protect the identity of a client or information regarding a client's fee arrangements if disclosure would "convey[ ] information which ordinarily would be conceded to be part of the usual privileged communication between attorney and client."

*United States v. Horn*, 976 F.2d 1314, 1317 (9th Cir.1992) (quoting *Baird v. Koerner*, 279 F.2d 623, 632 (9th Cir.1960)).

■ The application of the privilege is not triggered by the fact that the disclosure of the fee-payer's identity and the fee arrangements may incriminate the fee-payer. *Id.* Rather, the privilege is invoked where disclosure of the fee-payer/client identity and the fee information would infringe upon a privi-

leged communication. *In re Osterhoudt*, 722 F.2d 591, 593–94 (9th Cir.1983).

The Fifth Circuit has held that "[i]f the disclosure of the client's identity will also reveal the confidential purpose for which he consulted an attorney, we protect both the confidential communication and the client's identity as privileged." *In re Grand Jury Subpoena (DeGuerin)*, 926 F.2d 1423, 1431 (5th Cir.), *cert. denied*, 499 U.S. 959, 111 S.Ct. 1581, 113 L.Ed.2d 646 (1991). Likewise, the Seventh Circuit has stated, "[It is a] well-supported proposition that where disclosure of the unknown client would, in effect, reveal the client's motive for seeking legal advice, the privilege precludes disclosure." *Cherney*, 898 F.2d at 569. Both the *DeGuerin* and *Cherney* courts found significant the fact that the fee-payers had already admitted, to the subpoenaed attorneys, their involvement in the crime for which the defendants had been charged.

■ In contrast, the attorney-client relationship does not exist where the attorney acts as a mere conduit for the transfer of money. In *Vingelli v. United States Drug Enforcement Agency*, 992 F.2d 449 (2nd Cir. 1993), the client had hired an attorney to transmit funds to another attorney to represent a person facing drug charges. Despite the fact that the client sought legal advice regarding the ramifications of having contacts with and lending money to the criminal defendant, the Second Circuit held that disclosure of the fee-payer's identity does not necessarily reveal a confidential communication. In refusing to apply the attorney-client privilege, the Second Circuit stated:

> The rule governing the unprivileged nature of client identification implicitly accepts the fact that a client might retain or consult an attorney for numerous reasons. Thus, the fact that disclosure of [the client/fee-payer's identity] might suggest the possibility of wrongdoing on his or her part does not affect analysis of whether disclosure would reveal a confidential communication.

*Vingelli*, 992 F.2d at 453.

■ The facts of this case are more similar to *Cherney* and *DeGuerin* than *Vingelli* because Ralls has revealed through the sealed affidavit that the fee-payer specifically discussed his or her own criminal liability in connection with the same crime for which Bonnette was charged. *See Cherney*, 898 F.2d at 568; *see also DeGuerin*, 926 F.2d at 1432.

■ The district court's interpretation of this court's holding in *Hirsch* is erroneous. *Hirsch* explicitly states that the attorney-client privilege protects the fee-payer's identity where "disclosure would convey the substance of a confidential professional communication between the attorney and the client." *Hirsch*, 803 F.2d at 498. Contradicting this holding, the district court ordered Ralls to reveal the fee-payer's identity and the fee arrangements despite the fact that they are inextricably intertwined with other privileged communications. The district court failed to apply the correct test which is whether the fee-payer's identity and the fee arrangements are so intertwined with confidential communications that revealing either the identity or the arrangements would be tantamount to revealing a privileged communication.

An examination of Ralls' sealed affidavit, specifically paragraphs 5, 6, 10, 11, and 12, leaves no doubt that the fee arrangements and the fee-payer's identity are inextricably intertwined with confidential communications and fall within the attorney-client privilege. The fee-payer sought Ralls' advice regarding his involvement in the crime for which Bonnette was arrested. Further, the fee-payer paid for Bonnette's legal fees in the very same matter which gave rise to the attorney-client relationship. "In effect, therefore, disclosure of the [fee-payer's] identity would expose the substance of a confidential communication between the attorney and the [fee-payer]." *Cherney*, 898 F.2d at 568.

Where the district court "has failed to make a finding because of an erroneous view of the law, the usual rule is that there should be a remand for further proceedings.... unless the record permits only one resolution of the factual issue." *Pullman–Standard v. Swint*, 456 U.S. 273, 291–92, 102 S.Ct. 1781, 1791–92, 72 L.Ed.2d 66 (1982). Here, the facts are not in dispute, and the question to be resolved is one of mixed law and fact which is reviewed de novo. *Hirsch*, 803 F.2d

at 496. An appellate court is better situated to resolve a mixed question of law and fact which requires the "consideration of legal concepts and involve the exercise of judgment about the values underlying legal principles." *Collazo v. Estelle*, 940 F.2d 411, 416 (9th Cir.1991) (citations omitted), *cert. denied*, 502 U.S. 1031, 112 S.Ct. 870, 116 L.Ed.2d 776 (1992). We find that the fee-payer's identity and the fee arrangements are so intertwined with attorney-client communications that they are therefore privileged. In the interest of judicial economy, we rule that the subpoena be quashed in its entirety rather than remanding the matter to the district court.

▪ The Government argues that there was a clear conflict of interest in Ralls' representation of both Bonnette and the fee-payer and argues that this conflict prevented the formation of an attorney-client relationship between the fee-payer and Ralls. The Government's argument is not persuasive. First, there is no evidence to indicate the existence of an actual conflict of interest. We take notice of the fact that Ralls' representation of Bonnette was limited to Bonnette's initial appearance and his detention hearing. Even if an actual conflict of interest exists, however, the proper course of action for the district court is to bar Ralls from representation.

▪ Because we find in favor of Ralls, we do not address Ralls' two alternative arguments based upon the "last link"[1] and the "least intrusive means"[2] doctrines.

## IV

We **AFFIRM** the district court's decision to quash the subpoena pertaining to conversations between Ralls and the fee-payer and **REVERSE** the district court's decision not to quash the remainder of the subpoena. Ralls' sealed affidavit clearly establishes that he had an attorney-client relationship with the fee-payer and that the identity of the fee-payer and the fee arrangements are inextricably intertwined with privileged communications. Therefore, the fee information is privileged, and Ralls cannot be forced to testify regarding such information. We order that the grand jury subpoena be quashed in its entirety and reverse the district court's order holding Ralls in contempt.

**AFFIRMED IN PART; REVERSED IN PART.**

---

1. The "last link" doctrine prevents an attorney from disclosing a client's identity if disclosure would be the final step in the chain of evidence to indict or prosecute that client. *United States v. Gray*, 876 F.2d 1411, 1415–16 (9th Cir.1989), *cert. denied*, 495 U.S. 930, 110 S.Ct. 2168, 109 L.Ed.2d 497 (1990). This court has recognized the "last link" doctrine as it relates to fee information. *See Horn*, 976 F.2d at 1317; *Alexiou v. United States*, 39 F.3d 973, 976 (9th Cir.1994); *Lahodny v. United States*, 695 F.2d 363, 365 (9th Cir.1982). However, the application of the "last link" doctrine has been limited to situations where disclosure of the fee-payer's identity would be tantamount to disclosure of a privileged communication. *See Gray*, 876 F.2d at 1416; *Alexiou*, 39 F.3d at 976–77 (the court analyzed whether the communication was privileged in order to determine that the last link exception did not apply). Therefore, the decision of whether the last link doctrine applies turns on the court's ruling on whether the attorney-client privilege prevents the disclosure of the fee-payer's identity and fee arrangements.

2. The "least intrusive means" doctrine requires the Government to first exhaust all of its investigatory powers before "[it is] permitted to compel witness-attorneys to testify before a grand jury regarding matters which could be considered to be protected by the attorney-client privilege." *In re Witness–Attorney Before Grand Jury No. 83–1*, 613 F.Supp. 394, 398 (S.D.Fla.1984). The "least intrusive means" doctrine does not have application in the Ninth Circuit. In *United States v. Perry*, 857 F.2d 1346, 1348 (9th Cir.1988), this court firmly refused to require the Government to make a pre-indictment, preliminary showing of need before issuing a grand jury subpoena to an attorney-witness. Likewise, in *In re Grand Jury Proceeding (Schofield)*, 721 F.2d 1221, 1222 (9th Cir.1983), this court ruled that the Government need not make a preliminary showing of legitimate need and relevance before issuing a subpoena to an attorney who is representing the target of a grand jury investigation.