**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Charles E. ROWE, individually; Rowe and Associates, a professional corporation, Appellants.**

**No. 95–56416.**

United States Court of Appeals, Ninth Circuit.

Submitted Sept. 20, 1996.*

Decided Sept. 27, 1996.

34(a); 9th Cir.R. 34–4.

Peter J. Hughes, San Diego, California, for appellants.

Alan D. Bersin, Bruce R. Castetter & Robert F. Depippo, Assistant United States Attorneys, San Diego, California, for plaintiff-appellee.

Before: KOZINSKI and LEAVY, Circuit Judges, and SCHWARZER,** Senior District Judge.

KOZINSKI, Circuit Judge.

After learning of possible irregularities in attorney W. Lee McElravy's handling of client funds, the senior partner at his San Diego law firm, Charles E. Rowe, asked two young associates to investigate McElravy's conduct. Rowe also wrote to the State Bar, asking it to "take appropriate action" against McElravy. A grand jury investigating McElravy later subpoenaed the associates; the government hoped to question them

** The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

about their conversations with Rowe. Appellants argued that the conversations were protected by the attorney-client privilege.

■ The attorney-client privilege can exist only after a client consults an attorney, 24 Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure: Evidence* § 5473, at 105–08 (1986), "for the purpose of facilitating the rendition of professional legal services." *Id.* at 110.

The district judge, although expressing considerable unease about her ruling, held that appellants had not shown these requirements were met. According to the judge, who had spoken to the associates in camera, "Basically, they were trusted young associates [who] were asked to do some leg work and come up with information.... [T]hey were ... helping out." The judge noted that the associates were never told they were working as the firm's attorneys; that they didn't bill the firm or record hours expended on the firm's behalf; and that, because they were far less experienced than Rowe, "[t]hey were certainly taking direction from him." The judge issued an order compelling the associates to testify. Rowe and the firm, as probable holders of the privilege, appeal.

■ The government argues that, in assigning the associates to investigate McElravy, Rowe was not a client consulting an attorney. It further argues that the type of investigative work performed by the associates does not qualify as "professional legal services." We review these mixed questions of fact and law de novo. *In re Subpoena to Testify Before Grand Jury,* 39 F.3d 973, 976 (9th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1825, 131 L.Ed.2d 746 (1995).

■ **1. Attorney-client relationship.** Rowe assigned the associates to perform services on behalf of the firm. They were, effectively, in-house counsel. In determining the existence of a privilege, "[n]o attempt [is] made to distinguish between 'inside' and 'outside' counsel...." 2 Jack B. Weinstein et al., *Weinstein's Evidence* ¶ 503(a)(2)[01], at 503–30 (1996). *See also* 1 Scott N. Stone &

Robert K. Taylor, *Testimonial Privileges* § 1.10, at 1–35 (2d ed. 1993) ("Judge Wyzanski in *United States v. United Shoe Machinery Corp.* [89 F.Supp. 357, 360 (D.Mass. 1950)] established the principle that the attorney-client privilege will apply to confidential communications concerning legal matters made between a corporation and its house counsel.... *This principle has been followed with virtual unanimity by American courts.*" (emphasis added; footnote deleted)).

Several months after the associates began their investigation, Rowe turned the matter over to outside counsel. The associates thereafter conducted their activities under the direction of this outside counsel. The district court found, and the government now concedes, that the associates' communications with members of the firm after outside counsel was hired were privileged. However, the pre- and post-hiring distinction finds no support in commentary or caselaw. The hiring of outside counsel is, obviously, an indication that litigation is anticipated and, therefore, that legal services are required. In this case, it is clear that litigation was anticipated from day one.

■ **2. Professional legal services.** The government also argues that the associates were engaged in fact-finding, rather than the rendering of "professional legal services." It states: "The two associates collected facts for Rowe. They did not render any legal advice...." Government's Br. at 14. Similar statements are scattered throughout the government's brief.

■ Although some commentators, including Wright & Graham, continue to distinguish between fact-finding and lawyering,[1] federal judges cannot. In *Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), a law firm was retained to investigate wrongdoing within the client corporation. The question on appeal—which

---

1. "The better view would seem to be that investigative work is not 'professional legal services' and that no privilege applies where the lawyer's primary function is as a detective." Wright & Graham, *supra,* § 5478, at 229. Wright and Graham are, of course, mistaken on this score.

has vexed courts before and since—was the definition of "client" in the corporate setting. Whether conversations undertaken in the course of fact-finding can be privileged was never questioned by the Court. *See* Wright & Graham, *supra*, § 5478, at 228 ("[T]he issue was ignored in the Court's opinion."). In fact, the *Upjohn* Court observed, "The first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant." 449 U.S. at 390–91, 101 S.Ct. at 683. Thus, "the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id.*

■ Prior to *Upjohn*, "in claiming the protection of the attorney-client privilege [t]he corporation ha[d] the burden of showing that the communication was made for the purpose of securing *legal* advice...." *In re Grand Jury Subpoena*, 599 F.2d 504, 510 (2d Cir. 1979) (quoting *Weinstein's Evidence* ¶ 503(b)[04], at 503–45 (emphasis in original)). Where the attorney was asked for business (as opposed to legal) counsel, no privilege attached. *Id.* (citing *Valente v. Pepsico*, 68 F.R.D. 361, 367 (D.Del.1975)). *Upjohn* did not eliminate this distinction. What it did do is make clear that fact-finding which pertains to legal advice counts as "professional legal services." *See, e.g., In re Woolworth Corp. Sec. Class Action Litig.*, No. 94–CIV–2217 (RO), 1996 WL 306576 (S.D.N.Y. June 7, 1996) (*Upjohn* precludes finding that fact-gathering by lawyers on behalf of corporate client is business, not legal, service).

3. The government argues that upholding the privilege in this case would reward a law firm just for being a law firm because another type of company that uses its own employees to investigate internal wrong-doing would not get the benefit of the privilege. But a firm whose employees are physicians or computer programmers would probably not use its own employees to investigate legal wrong-doing; they would likely hire lawyers to do the job. Here, the firm happens to have employees who are lawyers, which made it easier for the senior partner to "hire" a lawyer—he needed only walk down the hall. This, however, did not change the fact that he asked lawyers—not secretaries, paralegals, librarians or other of the firm's employees—to conduct the investigation. And, having chosen to hand the job over to lawyers, he is justified in expecting that communications with these lawyers will be privileged. If a doctor, by analogy, consults one of his own partners for diagnosis of a personal health problem, their conversations are protected by the doctor-patient privilege. That patient happens to have easier access to doctors than most people; Rowe had easier access to lawyers. Neither is stripped of the privilege because hiring the professional was convenient.

We are not unmindful that the attorney-client privilege, like all privileges, can impede fact-finding. *See United States v. Olano*, 62 F.3d 1180, 1205 (9th Cir.1995) ("[T]he privilege 'has the effect of withholding relevant information from the factfinder ....' " (quoting *Clarke v. American Commerce Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992))). Nor are we unaware of academic criticism that the privilege allegedly gives unjustified protection to entrenched interests. *See, e.g.,* Elizabeth G. Thornburg, *Sanctifying Secrecy: The Mythology of the Corporate Attorney–Client Privilege*, 69 Notre Dame L.Rev. 157, 159 (1993) (disputing traditional rationales for attorney-client privilege). Nonetheless, we have no doubt that, under existing caselaw, the activities here meet the "attorney-client" and "professional legal services" requirements for the privilege.

■ 4. Finally, the government argues that, even if we were to find the existence of communications between a client and an attorney relating to the rendering of professional legal services, the crime or fraud exception may defeat the privilege. In the alternative, it argues, the privilege has been

waived by appellants. These are questions for the district court on remand.[2]

**REVERSED.**

---

2. Appellants make several additional requests along the way. They gripe that their copies of the government's brief were redacted, pursuant to the grand jury secrecy provisions of Fed. R.Crim.P. 6(e). They urge us to either provide them with the omitted passages or strike these portions of the brief. Appellants' Reply Br. at 8. Elsewhere, they ask "that necessary portions of the briefs and records be unsealed and briefing by amicus curiae invited or permitted." Appellants' Opening Br. at 16. We decline to treat invitations buried in appellate briefs as motions.

