# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-IA-00704-SCT

*KATHRYN N. NESTER*

**v.**

*JAY JERNIGAN*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/05/2004 |
| TRIAL JUDGE: | HON. ROBERT LOUIS GOZA, JR. |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | FELECIA PERKINS |
| ATTORNEY FOR APPELLEE: | PRO SE |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | REVERSED AND REMANDED - 08/04/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., DICKINSON AND RANDOLPH, JJ.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.     In this interlocutory appeal in a slander action, a defendant who is an attorney asks us to reverse an order of the Circuit Court of Forrest County requiring her to provide certain information in discovery which she claims (i) is work product, (ii) is protected by the attorney-client privilege, and (iii) if disclosed, would place her in violation of the Mississippi Rules of Professional Conduct.   Concluding that the information is protected by the attorney-client privilege, we reverse and remand.

## BACKGROUND FACTS AND PROCEEDINGS

¶2.    In 1997, attorney Kathryn N. Nester represented Greg Alston, one of four defendants in a criminal case in Forrest County Circuit Court.  During a hearing on various motions, Nester informed the trial judge that she had filed a motion to compel production of the psychiatric or psychological records of one of the State's witnesses.  Stating that she would "just as soon not embarrass anybody . . . and for purposes of privacy," Nester requested that she be allowed to discuss the motion at the bench.  The trial judge refused the request and required Nester to announce her motion in open court.  Nester then stated,

> Okay.  Well, it is our understanding that one of the State's witnesses is or has been at some point on psychiatric medication, and we feel that that type of information is directly relevant to impeach a witnesses' credibility, especially on matters of memory, if you're dealing with some kind of psychological problem.

The trial judge then asked, "Specifically who are you talking about?"  Nester replied, "Specifically Jay Jernigan."[1]  Nester then told the trial judge, "this is just on information and belief, but I'm certainly not making any statement one way or the other based on facts, just on information and belief."[2]

¶3.    The prosecutor then stated that he believed the State was entitled to know where Nester got the information.  The trial judge asked Nester if she would elaborate.  When she declined, the trial judge overruled her motion.

---

[1]Jernigan is a practicing attorney licensed by the State of Mississippi.

[2]Nester later filed an affidavit in which she stated that she obtained the information from a "credible source."

¶4.     Jernigan then filed this suit against Nester for slander, and he served discovery requests for the identity of the person who supplied her the information that Jernigan may have been on psychiatric medication.

¶5.     Nester moved to dismiss, asserting that her statements in court were privileged and that she was protected by immunity.  Additionally, Nester responded to the discovery requests by asserting that Jernigan sought to elicit information protected by the attorney-client privilege, including attorney work product.  Jernigan responded with a motion to compel responses to the discovery requests.  In granting Jernigan's motion to compel, the trial court stated:

> [W]hile the Defendants' claim of immunity might very well be valid if it is determined that the statements were not made to defraud or deceive the Court but were made in good faith on reliable information, nevertheless the Plaintiff is entitled to disclosure of the source of the information before this determination can be made . . . further . . . the claim of privilege applies to the content of the communication and not to the identity of the communicator and that upon disclosure of the content any privilege otherwise existing is waived.

¶6.     Nester filed a motion for reconsideration, or alternatively, for certification of the order for interlocutory review and stay.  The trial court denied Nester's motion for reconsideration, but granted permission to file an interlocutory appeal.  This Court granted Nester permission to bring this interlocutory appeal and stayed further trial court proceedings pending resolution of this appeal.  See M.R.A.P. 5.  Nester requests that we reverse the trial court's order and remand the matter for further proceedings.

**ANALYSIS**

¶7.     The merits of Jernigan's slander suit against Nester are not before us.[3]   The only issue

for this Court's consideration is whether the trial court erred in granting the motion to compel

the discovery of information which Nester claims is protected by the attorney-client privilege

and work product doctrine.   "The application of privilege is properly a mixed question of law

and fact, with the circuit court's factual findings reviewed for clear error and its interpretation

of the law reviewed de novo." *Hewes v. Langston*, 853 So.2d 1237, 1241 (Miss. 2003) (citing

*United States v. Neal*, 27 F.3d 1035, 1048 (5th Cir. 1994)).

*Attorney-Client Privilege*

¶8.     Nester says the trial court erred in granting the motion to compel because the

communications between Nester and her source of the relevant information, as well as the

identity of the source, are protected by the attorney-client privilege. Nester cites Mississippi

Rule of Evidence 502(b), which states:

> A client has a privilege to refuse to disclose and to prevent any other person
> from disclosing confidential communications made for the purpose of
> facilitating the rendition of professional legal services to the client (1) between
> himself or his representative and his lawyer or his lawyer's representative, (2)
> between his lawyer and the lawyer's representative, (3) by him or his
> representative or his lawyer or a representative of the lawyer to a lawyer or a
> representative of a lawyer representing another party in a pending action and
> concerning a matter of common interest therein, (4) between representatives of
> the client or between the client and a representative of the client, or (5) among
> lawyers and their representatives representing the same client.

Nester asserts that this Court has held that the attorney-client privilege "relates to and covers

all information regarding the client received by the attorney in h[er] professional capacity and

---

[3]The parties do not inform us how this case survived the holdings of *Gunter v. Reeves*, 198 Miss.
31, 21 So. 2d 468 (1945), and *Hardtner v. Salloum*, 148 Miss. 346, 114 So. 621 (1927), and we shall
not address it today.

in the course of h[er] representation of the client." ***Barnes v. State***, 460 So. 2d 126, 131 (Miss. 1984) (emphasis added). Nester also asserts that "all information regarding the client" covers the client's identity, where disclosure of the client's identity would compromise the attorney-client relationship or the attorney's ability to represent the client. Nester cites Ethics Opinion No. 57, The Mississippi State Bar, September 19, 1980, in which the Ethics Committee of the Mississippi State Bar stated that, in determining what is confidential, "[o]f real concern is the potential detriment to the client of the disclosure, possible client embarrassment and client preference that the information not be disclosed."

¶9.    In response – with the sole exception of his citation of Mississippi Rule of Evidence 502(b) – Jernigan provides a brief which cites no authority whatsoever. He simply tells us that Nester has bad motives and the information he seeks is not privileged because the privilege only applies to the content of the statement, and not the identity of the client. He says that Nester's intent in making the statement in court about Jernigan was to free her client of criminal charges at any cost to others, regardless of the truthfulness of her assertions. Jernigan fails, however, to explain how Nester's motion might have freed her client of criminal charges, unless he wishes us to assume that, had the motion been granted, it would have led to useful and admissible information (which Jernigan assures us does not exist).

¶10.    Without providing any basis for doing so, Jernigan attacks Nester's honesty by asserting that her claim of having a source is "highly questionable," and that Nester made up the statements in a ploy to attack his character because he was an important witness in the case

against her client, and because he was in the middle of a custody [4] dispute.[5]  Jernigan says that to allow Nester to make this statement and then assert the attorney-client privilege is to allow an attorney to make up lies about a witness, state them in open court, and suffer no consequences.  Jernigan claims that Nester is trying to craft Rule 502 so that she can "say and do anything in defense of her client" and then claim the attorney-client privilege to protect herself.

¶11.    In *Hewes v. Langston*, 853 So.2d 1237 (Miss. 2003), this Court discussed the breadth and scope of the attorney-client privilege:

> This Court has interpreted the scope of the attorney-client privilege under Mississippi law broadly, stating: the privilege relates to and covers **all information** regarding the client received by the attorney in his professional capacity and in the course of his representation of the client. Included are communications made by the client to the attorney and by the attorney to the client. In that sense it is a two-way street. *Barnes v. State*, 460 So.2d 126, 131 (Miss.1984) (emphasis added).  Further: "[t]he privilege does not require the communication to contain purely legal analysis or advice to be privileged." *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir.1991) (applying Mississippi law). "Instead, if a communication between a lawyer and client would facilitate the rendition of legal services or advice, the communication is privileged." *Id.* at 875.

*Hewes v. Langston*, 853 So.2d at 1244.  *See also* **Williamson v. Edmonds**, 880 So. 2d 310, 319 (Miss. 2004) (reaffirming the position stated in *Hewes*).  Both *Hewes* and *Williamson* recognize that "the attorney-client privilege is the oldest of the privileges for confidential communications known to the common law,"and "[i]ts purpose is to encourage full and frank

---

[4]We assume Jernigan refers to a child custody dispute. There is nothing in the record that relates to this assertion or to the importance of Jernigan's testimony to the criminal case against Nester's client.

[5]Given his failure to provide any support for his accusations against Nester of bad faith and dishonesty, we wonder how Jernigan distinguishes his actions from his claims of slander against Nester in his lawsuit.

communication between attorneys and their clients." *Hewes,* 853 So. 2d at 1249; *Willamson*, 880 So. 2d at 318 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)).

¶12.	The identity of a client is not generally protected by the attorney-client privilege. *See Hewes v. Langston,* 853 So. 2d at 1248 (citing *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127 (9th Cir. 1992)("the identity of the client [is] usually not protected from disclosure by the attorney-client privilege"); *see also* **In re Grand Jury Subpoena for Attorney Representing Criminal Defendant Reyes-Requena**, 926 F.2d 1423, 1431 (5th Cir. 1991) ("As a general rule, client identity [is] not protected as privileged."(citation omitted)).   It is notable, however, that the Fifth Circuit "ha[s] recognized a narrow exception to this general rule . . . when revealing the identity of the client . . . would itself reveal a confidential communication." **Reyes-Requena I**, 913 F.2d 1118, 1126 (5th Cir. 1990) (citing **United States v. Jones**, 517 F.2d 666, 688 (5th Cir. 1975), and **In re Grand Jury Proceedings (Pavlick)**, 680 F.2d 1026, 1027 (5th Cir. 1982) (en banc)).

¶13.	According to Nester, requiring her to respond to Jernigan's discovery requests would be tantamount to forcing her to reveal both a confidential communication and the identity of her client.   Jernigan argues that neither Nester nor her client can assert the privilege solely to protect the client's identity.   This argument does not accurately address the facts of this case.

¶14.	Nester was acting on information provided by a client.   The transcript of the hearing confirms that Nester revealed neither her client's identity nor the communication between them.   Rather, she received information from her client which prompted her to file the motion

7

to compel the production of certain records which she believed would aid her client's defense. Nester was doing no more than what lawyers frequently do. They make statements in court, file discovery requests, interview witnesses, file motions, and take other actions based on information received from various sources, including other clients. Nester's attempts to pursue the motion at the bench – without fanfare – were reasonable, are commendable, and belie any claim that she had a hidden agenda.

¶15. The information or communication Nester received from her client is privileged. Were we to hold that the attorney-client privilege is waived when an attorney acts on information received from a client, we would effectively destroy the privilege. Much of what an attorney does in investigating and pursuing a claim for a client is based on unsubstantiated information received from the client. Lawyers frequently accuse defendants of fraud, bad faith, dishonesty, recklessness, etc., based upon nothing more than unsupported statements from a client.[6] The statements from the client to the lawyer are privileged and not discoverable. The fact that Jernigan is a lawyer places him in no special place of privilege or immunity from the process.

¶16. We hold that the trial court may not compel Nester to disclose either the identity of, or communication from, her client.

*Work Product and The Rules of Professional Conduct*

¶17. Nester says that the trial court's order would require her to provide work product, and also would place her in violation of the Mississippi Rules of Professional Conduct. Having

---

[6]We note that, contrary to Jernigan's assertions, Nester did not "[state] to the Court that [Jernigan] is or had been at some point in time on psychiatric medication." The record reflects that Nester carefully and clearly informed the court, "this is just on information and belief, but I'm certainly not making any statement one way or the other based on facts, just on information and belief."

8

determined the attorney-client privilege protects both the communication and the identity of Nester's client, we decline to address these additional arguments.

## CONCLUSION

¶18.    The trial court's order is reversed, and this case is remanded for further proceedings consistent with this opinion.

¶19.    **REVERSED AND REMANDED.**

   **SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON, GRAVES AND RANDOLPH, JJ., CONCUR.  DIAZ, J., NOT PARTICIPATING.**